**Kathy KEHOE, in Her Capacity as Trustee of the Grist Mill Trust Welfare Benefit Plan, Appellant**

v.

**Jo POLLACK, Jo M. Pollack M.D., P.A., and Penn Mutual Life Insurance Company, Appellees**

NO. 14-16-00421-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed July 11, 2017

David T. McDowell, Nomaan K. Husain, Jonathan David Azano, Houston, TX, John L. Malesovas, Austin, TX, Anthony L. Vitullo, Dallas, TX, for Appellees.

Jeffrey R. Sandberg, Dallas, TX, for Appellant.

Panel consists of Chief Justice Frost and Justices Brown and Jewell.

## OPINION

Kem Thompson Frost, Chief Justice

This appeal arises out of a dispute over ownership of a life insurance policy. A covered employee under an employee welfare benefit plan filed suit against an insurance company and others asserting misrepresentation claims and seeking a declaratory judgment. The insurance company responded by filing an interpleader action, in which the covered employee and the trustee of the benefit plan each asserted ownership of the policy. The trial court denied a special appearance and a motion to compel arbitration filed by the trustee. The trial court also granted the covered employee's summary-judgment motion, determining as a matter of law that the employee is the policy owner. The trustee of the employee welfare benefit plan brings this appeal. We conclude that the trial court did not err in denying the trustee's special appearance and motion to compel arbitration, but that the trial court erred in granting the employee's summary-judgment motion. We thus affirm in part, reverse in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee/plaintiff Jo M. Pollack M.D., P.A. (the "Professional Association") adopted, joined, and agreed to participate in the Grist Mill Trust Welfare Benefit Plan (the "Plan"), that, according to its terms, provides death benefits, as well as other welfare benefits to certain specified individuals. Appellee/plaintiff Jo Pollack, a medical doctor, is the sole owner of the Professional Association. Under the Plan, the Professional Association made contributions to the Grist Mill Trust (the "Trust") as trust funds to be held under and in accordance with the terms of the Plan. Pursuant to the Plan, these funds were invested in a Penn Mutual Protection Builder Policy, a life insurance policy with a benefit payable on the death of Dr. Pollack (hereinafter the "Policy"). The Policy states that the owner and beneficiary of the Policy are as provided in the insurance application, and the insurance application provides that the Plan is the owner and beneficiary of the Policy.

According to Dr. Pollack, she believed that she was investing in a retirement plan, the contributions were tax deductible, and she would have access to the funds in the Policy at any time. She learned otherwise when the Internal Revenue Service ("IRS") audited Dr. Pollack and the Professional Association (collectively, the "Pollack Parties") and assessed interest and penalties on unpaid taxes. During the IRS audit process, the Pollack Parties learned that the Professional Association's contributions to the Plan were not tax deductible.

Dr. Pollack invested in what the Pollack Parties claimed was a retirement savings plan. According to the Pollack Parties, through the Professional Association's contributions to the Plan, Dr. Pollack could contribute more money into the Plan than she could in a traditional 401k plan, take tax deductions for the contributions, and allow the money to grow tax free. To achieve the favorable tax benefits, all the money would be used to buy a life insurance policy, which would provide a tax-free death benefit and would be overfunded so that it built up a significant cash value that would grow tax free and would be used for

Dr. Pollack's retirement or other needs. According to the Pollack Parties, the money Dr. Pollack contributed through the Professional Association would be used for Dr. Pollack's exclusive benefit, would be deposited at JP Morgan Chase Bank, and then paid to a prominent insurance carrier to deposit in the insurance policy that would insure Dr. Pollack's life. The terms of the Plan and other relevant documents differed significantly from Dr. Pollack's alleged understanding of the transactions.

### Contributions to the Plan

The Professional Association contributed at least $750,000 into the Plan from 2005 through 2010, of which $95,000 was used annually to pay premiums for the Policy. Dr. Pollack took tax deductions equal to the amount of the annual contributions.

### IRS Action Against the Pollack Parties

The IRS audited the Pollack Parties regarding the contributions into the Plan because the Plan had failed to comply with IRS regulations. The IRS held that the transaction was a non-deductible purchase of a life insurance policy and taxed Dr. Pollack on the premiums paid on the Policy and assessed interest and penalties.

### The Pollack Parties' Suit Against Penn Mutual

In 2013, the Pollack Parties filed this suit against appellee Penn Mutual Life Insurance Company, the insurer under the Policy, and several other defendants, alleging that the defendants had made misrepresentations to induce the Pollack Parties into investing in the Plan. During the course of the litigation, the Pollack Parties nonsuited their claims against all defendants, except one whose special appearance the trial court granted. The Plan document contained a forfeiture provision, which stated that "[a]ny litigation brought against the Plan, or threatened against the Plan either on an individual or a classwide basis will result in the immediate termination from the Plan of the individual Participant(s) or Employer(s) bringing such action or litigation or threatening such action or litigation." So, the Pollack Parties did not sue the Plan or the Plan's trustee.

The Pollack Parties asked the trial court to order Penn Mutual to recognize Dr. Pollack as the beneficial owner and beneficiary of the Policy or, alternatively, to award Dr. Pollack "an amount equal to the value and benefit of ownership of the [P]olicy."

### Notice of Termination from the Trust

After the Pollack Parties filed the lawsuit, the Trust advised by letter that it was terminating the Professional Association, and Dr. Pollack as a participant, from the Trust pursuant to the Plan document "for threatening and instigating litigation against the Plan and its affiliates and attorneys as well as numerous other acts committed in bad faith against the Plan."

### Penn Mutual's Counterclaim and Third-Party Petition in Interpleader Against the Pollack Parties and the Plan

Penn Mutual filed a counterclaim in interpleader against the Pollack Parties and a third-party petition in interpleader against Wayne Bursey, in his Capacity as Trustee of the Grist Mill Trust Welfare Benefit Plan. Penn Mutual claimed that it was an innocent stakeholder because Bursey, Dr. Pollack, and the Professional Association each were claiming to be the sole owner and beneficiary of the Policy. Penn Mutual pled that it was unconditionally tendering the "disputed contractual obligations coming due under the Policy to the Court's registry." Penn Mutual asked that the Pollack Parties and Bursey be required to assert their claims to ownership

of the Policy in this case, that the trial court enjoin them from commencing any further action against Penn Mutual based on the Policy, and that the trial court render a declaratory judgment as to which party is the rightful owner of the Policy. The Pollack Parties answered the counterclaim, and Dr. Pollack asserted a claim that she is the Policy's owner and beneficiary.

### Bursey's Special Appearance and Motion to Compel Arbitration

Bursey filed a special appearance in April 2014, contesting the trial court's personal jurisdiction over him as alleged in Penn Mutual's third-party petition in interpleader. A week later, Bursey filed a motion to compel arbitration and to stay the interpleader action, subject to the special appearance. Bursey based his filings on documents the Professional Association signed. Kathy Kehoe succeeded Bursey as Trustee of the Plan, and the trial court effectively allowed Kathy Kehoe, in her capacity as Trustee of the Plan (hereinafter "Kehoe") to substitute in Bursey's place as third-party defendant. The record does not reflect that Bursey or Kehoe has ever filed an answer to Penn Mutual's third-party petition or that either has ever asserted a claim that Bursey, Kehoe, or the Plan is the owner or beneficiary of the Policy. For ease of reference, we refer to Bursey or Kehoe as the "Trustee." In response to the Pollack Parties' summary-judgment motion, the Trustee asserted that the Plan owns the Policy.

### Penn Mutual's Discharge

Penn Mutual moved for a discharge, requesting that the trial court (1) require the Pollack Parties and the Trustee to assert their respective claims to ownership of the Policy in the interpleader action in the trial court; (2) enjoin them from commencing or prosecuting any further actions against Penn Mutual on the Policy; (3) grant a declaratory judgment awarding ownership of the Policy to the rightful owner; and (4) release and discharge Penn Mutual from all liability to any party to the action on account of the matters relating to the ownership of the Policy. Penn Mutual's counsel certified that he had conferred with counsel for all parties to the interpleader action and that all parties were unopposed to the relief requested in the motion. Neither the Pollack Parties nor the Trustee responded in opposition to the motion for discharge.

The trial court granted the motion for discharge and (1) ordered that all claims against Penn Mutual be dismissed with prejudice; (2) discharged Penn Mutual from all liability with respect to the Policy, except for "express contractual obligations contained within the Policy and accruing to the person(s) whom the Court shall adjudge is entitled to ownership of the Policy at issue"; and (3) restrained the Pollack Parties and the Trustee from instituting any action against Penn Mutual for the recovery of the ownership or surrender value of the Policy, or any part thereof.

### Summary Judgment in Favor of the Pollack Parties

The Pollack Parties filed a motion for partial summary judgment as to the ownership of the funds that Penn Mutual had tendered into the registry of the court, seeking to have the trial court declare Dr. Pollack the beneficial and equitable owner of the Policy's cash surrender value. The trial court granted the Pollack Parties' motion for partial summary judgment, (1) declaring that Dr. Pollack is the rightful owner of the interpleaded funds; (2) ordering Penn Mutual to tender the funds in the Policy to Dr. Pollack; and (3) ordering the

clerk of the court to take all steps necessary to ensure compliance with the order.

### Special Appearance and Arbitration Denied

On the same date and just before granting the Pollack Parties' summary-judgment motion, the trial court signed an order denying the Trustee's special appearance and motion to compel arbitration and an order denying the Trustee's objections to the Pollack Parties' summary-judgment evidence.

### Interlocutory Appeal

The Trustee timely filed a notice of interlocutory appeal of the order in which the trial court denied the special appearance and denied the motion to compel arbitration. The Trustee further stated that if this court determined that the order granting the Pollack Parties' summary-judgment motion is a final and appealable judgment disposing of all claims and all parties, the Trustee is also appealing the final judgment.

### II. ISSUES PRESENTED

In this appeal, the Trustee claims that the trial court erred by (1) denying the special appearance; (2) denying the motion to compel arbitration; (3) denying the Trustee's objections to the Pollack Parties' summary-judgment evidence; and (4) granting the Pollack Parties' summary-judgment motion.

### III. ANALYSIS

#### A. Did the trial court err by denying the special appearance?

In the first issue, the Trustee asserts that the trial court erred by denying the special appearance. Under Texas Rule of Civil Procedure 120a, a defendant may object to the court's exercise of personal jurisdiction over the defendant by making a special appearance. Tex. R. Civ. P. 120a. The defendant may make a special appearance by sworn motion filed before any motion to transfer venue or any other plea, pleading, or motion and may amend the special appearance to cure defects. *Id.* The issuance of process for witnesses, the taking of depositions, the serving of requests for admissions, and the use of discovery processes does not constitute a waiver of a defendant's special appearance. *Id.* Every appearance, before judgment, not in compliance with Rule 120a amounts to a general appearance. *Id.*

A defendant's special appearance "shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard."[1] *Id.* A party enters a general appearance, and so waives its special appearance, if the party invokes the judgment of the court on any question other than the court's jurisdiction or recognizes by its acts that an action is properly pending against it. *See Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam).

A specially-appearing defendant must make a timely request for a hearing, bring the special appearance to the trial court's attention, and secure a ruling on the preliminary question of personal jurisdiction. *Milacron, Inc. v. Performance Rail Tie, L.P.*, 262 S.W.3d 872, 875–76 (Tex. App.—Texarkana 2008, no pet.). Otherwise, the defendant waives its special appearance by not timely pressing for a hearing. *Id.* at 876. A defendant waives its special appearance by failing to get a ruling on the special appearance before the trial on the merits begins or before the

---

1. No determination of any issue of fact in connection with the objection to jurisdiction is a determination of the merits of the case or any aspect thereof. Tex. R. Civ. P. 120a.

court adjudicates the merits of the claims against the defendant. *See Welborn-Hosler v. Hosler*, 870 S.W.2d 323, 326 (Tex. App.—Houston [14th Dist.] 1994, no pet.); *Seeley v. Seeley*, 690 S.W.2d 626, 628 (Tex. App.—Austin 1985, no writ).

In Penn Mutual's third-party petition, against which the Trustee made a special appearance, Penn Mutual asked the trial court to (1) require the Pollack Parties and the Trustee to assert their respective claims to ownership of the Policy in the interpleader action in the trial court; (2) enjoin them from commencing or prosecuting any further actions against Penn Mutual on the Policy; (3) grant a declaratory judgment awarding ownership of the Policy to the rightful owner; and (4) release and discharge Penn Mutual from all liability to any party to the action on account of the matters relating to the Policy's ownership. In its motion for discharge, Penn Mutual asked the trial court to grant three of these four requests for relief. The record reflects that despite the Trustee's pending special appearance, the Trustee stood unopposed to the trial court granting the relief requested in the motion. In addition, despite ten days' notice that Penn Mutual's motion for discharge would be submitted to the trial court for ruling, the record does not reflect that the Trustee took any steps to see that the trial court ruled on the special appearance before ruling on the motion for discharge, nor did the Trustee object to the trial court's ruling on the motion for discharge before ruling on the Trustee's special appearance.

On September 16, 2014, five months after the Trustee filed the special appearance and before that special appearance was submitted to the trial court for ruling, the trial court granted Penn Mutual's unopposed motion for discharge. In granting this motion, the trial court restrained the Trustee from instituting any action against Penn Mutual for the recovery of the ownership or surrender value of the Policy, or any part thereof. The Trustee thus allowed the trial court to exercise personal jurisdiction over the Trustee and to grant relief against the Trustee as part of Penn Mutual's interpleader action, without first securing a ruling on the Trustee's special appearance or objecting to the trial court's failure to rule on the special appearance before taking this action.

The Trustee had the burden to set its special appearance for a hearing and to secure a ruling, but the trial court did not rule on the special appearance until twenty months after the discharge order, on the date on which the trial court granted the Pollack Parties' summary-judgment motion. By failing to get a ruling on the special appearance before the trial court discharged Penn Mutual and restrained the Trustee from instituting any action against Penn Mutual for the recovery of the ownership or surrender value of the Policy, the Trustee waived the special appearance and the challenge to the trial court's exercising personal jurisdiction over the Trustee.[2] *See Milacron, Inc.*, 262 S.W.3d at 875–76; *Welborn-Hosler*, 870 S.W.2d at 326; *Seeley*, 690 S.W.2d at 628. So, we overrule the Trustee's first issue.[3]

---

2. If the trial court had denied the Trustee's special appearance before signing the discharge order, the Trustee could "appear generally for any purpose" without waiver of the special appearance. *See* Tex. R. Civ. P. 120a(4); *see Welborn-Hosler*, 870 S.W.2d at 326.

3. The Pollack Parties assert that, in the event this court determines that the trial court did not have personal jurisdiction over the Trustee, the trial court had in rem jurisdiction because Penn Mutual interpleaded the Policy funds into the registry of the court. In light of our disposition of the Trustee's first issue, we

## B. Did the trial court err by denying the Trustee's motion to compel arbitration?

In her second issue, the Trustee asserts that the trial court erred by denying the motion to compel arbitration. Courts cannot compel a party to arbitrate claims in the absence of an agreement to arbitrate. *In the Estate of Guerrero*, 465 S.W.3d 693, 699 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc). A party moving to compel arbitration bears the initial burden of proving the existence of an arbitration agreement and showing that the claims in question fall within the arbitration agreement's scope. *See id.* A party moving to compel a party who did not sign the arbitration agreement to arbitrate also bears the burden of establishing that the arbitration agreement binds the nonsignatory.[4] *See id.* at 699–700; *The Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 394 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Santander Consumer USA, Inc. v. Mata*, No. 03-14-00782-CV, 2017 WL 1208767, at *2 (Tex. App.—Austin Mar. 29, 2017, no pet.) (mem. op.). The record must be construed in a light favorable to the trial court's ruling on the motion to compel arbitration. *In the Estate of Guerrero*, 465 S.W.3d at 701. When, as in today's case, the trial court did not state a basis for its ruling in the order denying the motion to compel arbitration, we must uphold the trial

court's ruling on any legal theory supported by the evidence. *Id.*

In the trial court, the Trustee sought to compel arbitration of Penn Mutual's third-party claim against the Trustee and presumably Penn Mutual's counterclaim against the Pollack Parties. In these claims, Penn Mutual asserted an interpleader action and asked the trial court to (1) require the Pollack Parties and the Trustee to assert their respective claims to ownership of the Policy in the interpleader action in the trial court; and (2) grant a declaratory judgment awarding ownership of the Policy to the rightful owner. Thus, the Trustee sought to compel Penn Mutual to arbitrate its claims for interpleader and declaratory relief and to compel the Pollack Parties to arbitrate their claims that Dr. Pollack is the owner and beneficiary of the Policy.[5]

The Trustee sought to compel arbitration based on three documents containing arbitration clauses. Dr. Pollack signed each of these documents as President of the Professional Association. Penn Mutual did not sign any of these documents nor did Dr. Pollack sign them in her individual capacity. So, the Trustee sought to compel Dr. Pollack to arbitrate in her individual capacity even though she did not sign in her individual capacity any of the three documents containing the arbitration clauses. In addition, the Trustee sought to

need not and do not address this conditional argument.

**4.** An exception to this rule may apply if the parties to the arbitration agreement clearly and unmistakably provide that the arbitrators, rather than the courts, are to determine whether the arbitration agreement binds a nonsignatory, in which case the arbitrators might determine that issue. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). We need not address this issue today because none of the arbitration agreements upon which the Trustee relies clearly and

unmistakably provide that the arbitrators, rather than the courts, are to determine whether the arbitration agreement binds a nonsignatory.

**5.** As stated above, the Pollack Parties did not assert any claim against the Trustee, but they asserted this claim in response to Penn Mutual's interpleader counterclaim, apparently as a claim to the ownership of the Policy or of the value of the Policy tendered into the trial court's registry.

compel Penn Mutual to arbitrate even though Penn Mutual did not sign any of the three documents containing the arbitration clauses. In the trial court, the Trustee did not carry the burden of establishing that any of the three arbitration clauses bound Penn Mutual or Dr. Pollack in her individual capacity. *See In the Estate of Guerrero*, 465 S.W.3d at 699–700; *Santander Consumer USA, Inc.*, 2017 WL 1208767, at *2–3. We conclude that the trial court did not err in denying the Trustee's motion to compel arbitration. *See In the Estate of Guerrero*, 465 S.W.3d at 699–700; *Santander Consumer USA, Inc.*, 2017 WL 1208767, at *2–3. We overrule the Trustee's second issue.

### C. Did the trial court render a final judgment?

In her notice of appeal, the Trustee identified two reasons the trial court's summary-judgment order might not be a final judgment. We must decide this finality issue to determine whether we have appellate jurisdiction over the Trustee's third and fourth issues concerning the summary-judgment order and the Trustee's objections to the Pollack Parties' summary-judgment evidence. Under the general rule for determining finality, "[a] judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001).

#### 1. Purported Failure to Address All Claims Asserted in the Pollack Parties' Fifth Amended Petition

First, according to the Trustee, in the summary-judgment order the trial court did not address the claims the Pollack Parties asserted against Penn Mutual in their Fifth Amended Petition. On May 21, 2014, the Pollack Parties nonsuited all of their claims against Penn Mutual. Four months later, on September 16, 2014, the trial court signed the discharge order, dismissing all claims against Penn Mutual with prejudice and discharging Penn Mutual from all liability with respect to the Policy, except for "express contractual obligations contained within the Policy and accruing to the person(s) whom the Court shall adjudge is entitled to ownership of the Policy at issue."

Months later, on May 11, 2015, the Pollack Parties filed a Fifth Amended Petition. The Pollack Parties stated that they made "no claims against Penn Mutual other than [Dr. Pollack's] claim to the ownership rights of the [P]olicy interpled into the registry of this Court." Furthermore, Dr. Pollack's claims "against Penn Mutual [were] limited to [her] rights to the ownership or value of the [Policy]." Finally, Dr. Pollack sought an "order requiring Penn Mutual to recognize [Dr. Pollack] [as] the beneficial owner of the [Policy] issued on [Dr.] Pollack's life, and recognize [Dr.] Pollack as the beneficiary thereof." Dr. Pollack asserts that her Fifth Amended Petition preserves her right to the interpleaded funds.

The Pollack Parties' Fifth Amended Petition makes clear that the Pollack Parties asserted no claims against Penn Mutual other than Dr. Pollack's claim to rights to the ownership or value of the Policy. In the summary-judgment order, the trial court disposed of this claim. The Pollack Parties had no other remaining claims. The Trustee did not assert any claims in the trial court, and between the discharge order and the summary-judgment order, the trial court disposed of all of Penn Mutual's claims.

#### 2. Purported Failure to Dispose of Counterclaim the Trustee Allegedly Filed

Second, the Trustee claims that the trial court's summary-judgment order did not dispose of the Trustee's original counterclaim. The Trustee stated that she filed the counterclaim on May 6, 2016, as a defensive counterclaim to preserve the Trustee's claims to the interpleaded asset and attorney's fees. The clerk's record does not contain any counterclaim filed by the Trustee. The Trustee did not mention the counterclaim in the Trustee's opening appellate brief or in the Trustee's reply brief. The trial court clerk has certified that there is no such document in the trial court's file.

The record reflects that in the summary-judgment order, the trial court actually disposed of all pending parties and claims, so the order is final and appealable under the *Lehmann* analysis. *See id.* Having determined that the trial court rendered a final judgment, we now turn to address the Trustee's third and fourth issues regarding the summary judgment and the objections to the summary-judgment evidence.

## D. Did the trial court err by granting the Pollack Parties' summary-judgment motion?

In her third issue, the Trustee asserts that the trial court erred by granting the Pollack Parties' summary-judgment motion and declaring Dr. Pollack the rightful owner of the interpleaded funds.

 We review the grant of summary judgment de novo. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). In a traditional summary-judgment motion, if the movant's motion and summary-judgment evidence facially establish the movant's right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Will-*

*rich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). We consider all the evidence in the light most favorable to the nonmovant, crediting favorable evidence to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

In their summary-judgment motion, the Pollack Parties asserted that, as a matter of law, Dr. Pollack is the owner of the interpleaded funds, based on the following summary-judgment grounds: (1) Floyd Walling or other persons induced the Pollack Parties into participating in the Plan by misrepresentations regarding the nature of the transaction; (2) a constructive trust should be imposed on the funds in favor of Dr. Pollack because the Plan obtained legal title to the funds in an "unconscientious manner," so that the Plan cannot retain property that really belongs to Dr. Pollack; (3) the Plan is estopped from denying that Dr. Pollack owns the funds under the quasi-estoppel doctrine; (4) the Trustee erroneously invoked the Plan's forfeiture provision; and (5) even if the Plan holds legal title to the interpleaded funds, Dr. Pollack, as a beneficiary of the Trust, owns equitable or beneficial title to the funds.

### 1. Fraudulent Inducement and Constructive Trust

 A party who signs a contract is presumed to know its contents. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 423–24 (Tex. 2015). When a party signs a contract after having an opportunity to read the contract, the law

presumes that the party knows and accepts all of the contract's terms, even if the party chose not to read the contract. *See id.* One who signs a contract without reading it can avoid this presumption under a narrow "trick or artifice" exception by showing that the signing party was prevented by a fraudulent trick or artifice from reading the contract or having the contract read to the signing party. *See id.* at 425 (disagreeing with lower court's conclusion that a "trick or artifice" prevented the plaintiff from reading the instrument before signing it in case in which the evidence showed that the signing party had an opportunity to read the instrument or have it read to him but instead chose to rely upon oral representations regarding the contents of the instrument); *Harvey v. Elder*, 191 S.W.2d 686, 689 (Tex. Civ. App.—San Antonio 1945, writ ref'd) (holding that doctor's oral representation that document was a receipt and his failure to disclose that it contained releases of the patient's claims, as a matter of law, did not constitute a "trick or artifice" which prevented the patient from reading the release before signing it); *Indemnity Ins. Co. of No. Am. v. W.L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553, 556–57 (1937) (holding that employer did not engage in a "trick or artifice" which prevented its employees from reading an assignment document attached to the normal document signed by the employees before being paid their wages).

 A party may avoid the enforcement of a contract's terms by proving that the party was fraudulently induced to enter into the contract. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 423–24. To establish such a claim, a party must offer proof that (1) someone made a material representation that was false; (2) the representation was known to be false when made or was made without knowledge of its truth;

(3) the representation was intended to be and was relied upon by the party; and (4) the party justifiably relied on the false representation and thereby suffered injury. *See id.* (addressing fraudulent-inducement elements); *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001) (stating that "with fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties"); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (listing the essential elements of fraud). A party to a written contract cannot justifiably rely on an oral representation that contradicts the contract's unambiguous terms. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 423–24.

 Dr. Pollack, as President of the Professional Association, signed the "Adoption Agreement," under which the Professional Association joined the Plan and agreed to all of the provisions of the Plan. Section 5.04 of the Plan provides that the trustee of the Trust may invest the funds contributed by the Professional Association in life insurance contracts on the lives of the covered employees. Under the Plan, a covered employee on whom insurance has been acquired "shall have no rights in the policy or proceeds of the policy." The Plan provides that "[a]ll such insurance contracts shall be owned by the Plan," and that "the Plan shall be designated as the beneficiary of the policies."

Dr. Pollack, as President of the Professional Association, signed the "Disclosure and Acknowledgment Statement" (the "Statement"), which provides that subject to their underwriting requirements and restrictions, Penn Mutual and its insurance companies have agreed "to issue policies to the Plan on the lives of eligible employees of the [Professional Association]." The Statement also provides that "[a]ny policy

so issued will designate the Plan as the sole owner and beneficiary of the policy[.]"

In the Statement, the Professional Association, on its own behalf and on behalf of its Participating Employees, acknowledged that (1) "[i]n determining whether to adopt the Plan and to what extent [the Professional Association and its Participating Employees] would participate, they have sought and relied on legal and tax advice from their own independent advisors"; (2) "The Plan provides for certain welfare benefits for Participating Employees and cannot be used as a vehicle for deferred compensation or retirement income"; and (3) "neither the Sponsor [of the Plan] nor the Administrator [of the Plan] can make any representations or warranty of any tax deductibility of any contributions to the Plan."

By signing the Statement on behalf of the Professional Association, Dr. Pollack represented that she had read the Statement:

The [Professional Association], for itself, its successors, assigns and its Participating Employees, hereby asserts that it has read this statement in full, understands its provisions or has sought legal advice concerning its provisions, and agrees to be bound by the same.

Dr. Pollack, as President of the Professional Association, also signed the insurance application, which provides that the Plan is the owner and primary beneficiary of the Policy. The insurance application does not provide for any other beneficiary under the Policy. The part of the Policy

found in the summary-judgment evidence contains a statement that the owner and beneficiary of the Policy are as provided in the insurance application.[6]

Dr. Pollack, as President of the Professional Association, additionally signed a "Certificate of Coverage," on at least four separate dates. That certificate provides that the Plan is a death benefit plan:

The Grist Mill Trust is an employee welfare benefit plan which provides death benefits to the designated beneficiaries of Participating Employees. The Plan is a death benefit only plan and is not a retirement plan or a plan of deferred compensation.

Dr. Pollack, as President of the Professional Association, and in her individual capacity as a "Covered Employee," signed an "Election of Participation & Beneficiary Designation Form," in which Dr. Pollack stated that she wished to participate in the Plan and in which Dr. Pollack designated the "Jo Pollack 2005 Irrevocable Trust" as the beneficiary "of any death benefit payable under the Plan[.]"

A court generally interprets an insurance policy under the same rules of construction that apply to any other contract. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740–41 (Tex. 1998). Applying the ordinary rules of contract construction to insurance policies, the reviewing court ascertains the parties' intent by looking only to the four corners of the policy to see what is actually stated and does not consider what allegedly was meant. *Fiess*

6. All copies of the Policy found in the summary-judgment evidence are missing various even-numbered pages. The missing pages may be found in the copy of the Policy that Penn Mutual attached to its interpleader pleading. These missing pages contain statements that (1)"[t]he Owner of [the Policy] is as stated in the application unless changed by a subsequent owner designation or assignment"; (2)

"[w]hile [the Policy] is in force before the death of the Insured, the Owner may exercise all of the rights in [the Policy] without the consent of any other person"; and (3) "[t]he Beneficiary of [the Policy] is as stated in the application unless changed by a subsequent beneficiary designation on a form provided by [Penn Mutual]."

*v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006); *Williams Consolidated I, Ltd./ BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895, 902 (Tex. App.—Houston [14th Dist.] 2007, no pet). If a court can ascertain only one reasonable meaning of the policy provision, the insurance contract is not ambiguous, and the court will enforce it as written. *See Fiess*, 202 S.W.3d at 746; *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998).

▇▇ Under the unambiguous language of the Plan and the Statement, the Plan shall be the owner and beneficiary of any insurance policy obtained pursuant to the Plan. Under the unambiguous provisions of the insurance application and the Policy contained in the summary-judgment evidence, the Plan is the owner and beneficiary of the Policy. The Pollack Parties cite deposition testimony of Richard Belding regarding his understanding of how it was intended that "Grist Mill" would make money.[7] The Pollack Parties also cite the testimony of Kathy Kehoe, the current Trustee, that it is not the intention of the Trust that it would receive the cash surrender value of insurance policies from terminated plan participants as a source of revenue. To the extent this testimony indicates that the Plan is not the owner or beneficiary of the Policy as stated in the unambiguous language of the Policy and application, or that the Trustee or Plan do not have the rights stated in the unambiguous language of the Plan, this testimony is parol evidence that is incompetent, even if the Trustee did not object to it.[8] *See White Oak Operating Co., LLC v. BLR Constr. Cos., LLC*, 362 S.W.3d 725, 734 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (stating that that unobjected-to parol evidence is incompetent and has no probative value to change meaning of an unambiguous written instrument).

The summary-judgment evidence shows that the Plan, rather than Dr. Pollack, is the owner and beneficiary of the Policy. Though Dr. Pollack testified that she did not read the Plan documents before she signed them, the Pollack Parties have neither alleged nor proven by summary-judgment evidence that Dr. Pollack was prevented by a fraudulent trick or artifice from reading the Plan documents (including the insurance application) or having the documents read to her. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 425; *Harvey*, 191 S.W.2d at 689. Therefore, we presume that Dr. Pollack knew and accepted all of the terms of these documents. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 423–24.

▇▇ In the Pollack Parties' summary-judgment motion, they admit that the Plan "is named as the legal owner of the [Policy]." The Pollack Parties contend that, though the Plan is the legal owner

---

7. Belding was asked, "[a]nd it was never intended so that [sic] Grist Mill or Benistar could start taking money that was contributed to pay these policies and add a cash surrender value for these policies, it was never intended that Grist Mill would make money by taking that, was it?" And Belding responded. "In my understanding and my marketing, that was never understood to be the case."

8. The Pollack Parties assert that this evidence falls within an exception to the parol evidence rule because it constitutes evidence that the Pollack Parties were fraudulently induced to participate in the Plan. *See Marburger v. Seminole Pipeline Co.*, 957 S.W.2d 82, 86 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (concluding that parol evidence is admissible to show fraudulent inducement). This evidence does not appear to constitute proof of any of the elements of fraudulent inducement. Nonetheless, to the extent this evidence is admissible to show fraudulent inducement, the evidence would be competent and admissible for that purpose and not to contradict the unambiguous language of any of the relevant documents. *See id.*

of the Policy, Dr. Pollack is the beneficial and equitable owner of the interpleaded funds for various reasons. One of these reasons appears to be the Pollack Parties' contention that Floyd Walling or other persons induced the Pollack Parties into participating in the Plan by oral misrepresentations that the Plan was a retirement plan, that Dr. Pollack owned the Policy, that Dr. Pollack could access the funds at any time, and that the funds were exclusively for Dr. Pollack's benefit. We presume for the sake of argument that, by pleading and proving that Floyd Walling or other persons fraudulently induced the Pollack Parties into participating in the Plan, the Pollack Parties would be entitled to recover the interpleaded funds. Under this presumption, the Pollack Parties had the burden to conclusively prove by summary-judgment evidence all the essential elements of fraudulent inducement, including that they justifiably relied on the false representations regarding the nature of the transaction. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 423–24. But, as a matter of law, the Pollack Parties could not justifiably rely on an oral representation that contradicts the unambiguous terms of the Plan documents. *See id.* Because the oral misrepresentations on which the Pollack Parties claim they relied contradict the unambiguous language of the Plan documents, the Pollack Parties did not conclusively prove justifiable reliance, and the trial court erred to the extent the court granted summary judgment on the ground that Floyd Walling or other persons induced the Pollack Parties into participating in the Plan by misrepresentations regarding the nature of the transaction. *See id.*

The Pollack Parties also sought summary judgment that Dr. Pollack is the owner of the interpleaded funds on the ground that a constructive trust should be imposed on the funds in favor of Dr. Pollack because the Plan obtained legal title to the funds in an "unconscientious manner," so that the Plan cannot retain property that really belongs to Dr. Pollack. As discussed above, we presume that Dr. Pollack knew and accepted all of the terms of the relevant documents, including the insurance application, under which the Plan is the owner and beneficiary of the Policy. *See id.* The Pollack Parties cannot avoid the consequences of Dr. Pollack's signing the documents and the Pollack Parties' participating in the Plan by claiming they were fraudulently induced by oral misrepresentations that contradict the Plan documents' unambiguous terms. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 423–24.

We conclude that the summary-judgment evidence does not conclusively prove that Dr. Pollack is the owner of the interpleaded funds on the ground that a constructive trust should be imposed on the funds because the Plan obtained legal title to the funds in an "unconscientious manner." *See id.* Thus, the trial court erred to the extent the court granted summary judgment on this ground.

### 2. Quasi-Estoppel Doctrine

The Pollack Parties also sought summary judgment that Dr. Pollack is the owner of the interpleaded funds on the ground that the Plan is estopped from denying that Dr. Pollack owns the funds under the quasi-estoppel doctrine. The doctrine of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Davis-Lynch, Inc. v. Asgard Techs., LLC.*, 472 S.W.3d 50, 68 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Quasi-estoppel applies only when it would be unconscionable to allow the party to maintain a position inconsistent with

one to which the party acquiesced or from which the party accepted a benefit. *Id.*

The summary-judgment evidence shows that Floyd Walling was acting as Dr. Pollack's financial advisor. The summary-judgment evidence does not conclusively prove that Walling or any other person was acting on behalf of the Plan when making oral representations concerning the Plan or the transaction in which the Pollack Parties were participating. As discussed above, we presume that Dr. Pollack knew and accepted all of the terms of the relevant documents, including the insurance application, under which the Plan is the owner and beneficiary of the Policy. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 423–24. The Pollack Parties cannot avoid the consequences of Dr. Pollack's signing the documents and the Pollack Parties' participating in the Plan by claiming they were fraudulently induced by oral misrepresentations that contradict the Plan documents' unambiguous terms. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 423–24. The summary-judgment evidence does not conclusively prove that it would be unconscionable to allow the Plan to assert, consistent with the relevant documents, that it is the owner and beneficiary of the Policy. *See Davis-Lynch, Inc.*, 472 S.W.3d at 68; *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 638 (Tex. App.— Houston [14th Dist.] 2012, pet. denied). Thus, the trial court erred to the extent the court granted summary judgment on the ground that the Plan is estopped from denying that Dr. Pollack owns the funds under the quasi-estoppel doctrine.

### 3. Forfeiture of Policy for Initiating Litigation

The Pollack Parties also sought summary judgment that Dr. Pollack is the owner of the interpleaded funds on the ground that the Trustee erroneously invoked the Plan's forfeiture provision. Under this provision, any litigation threatened or brought against the Plan by an individual participant or employer will result in the immediate termination from the Plan of the individual participant or employer bringing or threatening the litigation. Additionally, under this provision the Plan Sponsor has the right to terminate immediately the participation in the Plan of any employer or participant who commits any other act not in good faith compliance with the Plan documents. The Trustee has taken the position that the Pollack Parties have been terminated from the Plan because they threatened and instigated litigation against the Plan and its affiliates and attorneys and for other acts allegedly committed in bad faith against the Plan. The Pollack Parties assert that they did not file suit against the Plan and that there is no basis for terminating them from the Plan under this termination provision. Presuming for the sake of argument that the Trustee improperly terminated the Pollack Parties from the Plan based upon this provision, the improper termination would not allow Dr. Pollack to become the owner and beneficiary of the Policy in place of the Plan.[9] Therefore, the trial court erred to the extent the court granted summary judgment on the ground that the Trustee erroneously invoked the Plan's forfeiture provision.[10]

9. The Pollack Parties are asserting this argument in support of their claim to the interpleaded funds rather than as a direct claim against the Plan or the Trustee. If the Pollack Parties were to assert this issue against the Plan or the Trustee, this issue would fall within the scope of the clause in the Plan requiring arbitration in New York, New York.

10. On appeal, the Pollack Parties assert that the trial court was free to disregard the forfeiture provision because it is substantively unconscionable and against public policy. The

#### 4. Dr. Pollack's Status under the Plan

 The Pollack Parties also sought summary judgment that Dr. Pollack is the owner of the interpleaded funds on the ground that, even if the Plan holds legal title to the interpleaded funds, Dr. Pollack, as a beneficiary of the Trust, owns equitable or beneficial title to the funds. But, under the unambiguous language of the Plan, the Plan does not give Dr. Pollack equitable or beneficial title to the interpleaded funds. Though the Plan states that the funds contributed by the employers will be a "trust fund," the Plan states that these trust funds will be held in accordance with the terms of the Plan. Under the unambiguous language of the Plan, the Plan will be the owner and beneficiary of any insurance policy obtained pursuant to the Plan, and Dr. Pollack is a "Covered Employee," who may make a claim for benefits under the Plan. The summary-judgment evidence did not conclusively prove that Dr. Pollack is the owner of the interpleaded funds because, as a beneficiary of the Trust, Dr. Pollack owns equitable or beneficial title to the funds.[11]

Under the applicable standard of review, we conclude that the trial court erred in granting the Pollack Parties' summary-judgment motion and concluding as a matter of law that Dr. Pollack is the rightful owner of the interpleaded funds. Thus, we sustain the Trustee's third issue.

#### E. Did the trial court err by denying the Trustee's objections to the Pollack Parties' summary-judgment evidence?

In the fourth issue, the Trustee asserts that the trial court abused its discretion by denying the Trustee's objections to the Pollack Parties' summary-judgment evidence. We have reviewed the summary-judgment evidence under the presumption that the trial court did not err in denying the Trustee's objections. Even under this presumption, we have concluded that the trial court erred by granting the Pollack Parties' summary-judgment motion. Therefore, we need not address the fourth issue.

### IV. CONCLUSION

We affirm the trial court's order denying the Trustee's special appearance and motion to compel arbitration. We conclude that the trial court erred by granting summary judgment that Dr. Pollack is the rightful owner of the funds interpleaded into the registry of the court, and we reverse the summary judgment. We remand the case to the trial court for proceedings consistent with this opinion.

---

Pollack Parties did not assert this argument as a summary-judgment ground in their motion. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (stating that a summary-judgment motion must stand or fall on the grounds expressly presented in the motion). In any event, even if the trial court could have disregarded the forfeiture provision, that would not provide a basis for Dr. Pollack to become the owner and beneficiary of the Policy in place of the Plan.

11. The Pollack Parties are asserting this argument in support of their claim to the interpleaded funds rather than as a direct claim against the Plan or the Trustee. If the Pollack Parties were to assert this issue against the Plan or the Trustee, this issue would fall within the scope of the clause in the Plan requiring arbitration in New York, New York.