**Affirmed and Memorandum Opinion filed July 27, 2023**



**In The**

# Fourteenth Court of Appeals

## NO. 14-22-00386-CV

**BRYAN JASON ST. LUCE, MONTRELL RYDELL LOWE, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF JUST TOUCH HOLDINGS, LLC, AND JUST TOUCH U, LLC, Appellants**

**V.**

**CARLOS J. VITAL, VITA BOOT TECH, LLC AND BRADFORD C. MOYE, Appellees**

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2022-09984**

## MEMORANDUM OPINION

This is an appeal from the trial court's May 4, 2022 order denying an application for temporary injunction seeking to prevent appellees' takeover. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants Lowe and St. Luce founded appellant Just Touch U, LLC, d/b/a Just Touch Interactive ("Just Touch U") on February 28, 2018. Just Touch U was created to assist students in their college application process. In its inception, Lowe owned 75% of Just Touch, his wife, Joelle, owned 15% and St. Luce owned the remaining 10%.

Lowe and St. Luce sought outside investors, and found appellee Carlos Vital, owner of appellee Vita Boot Tech ("Vita Boot"). The parties struck a deal, giving Vital part ownership in Just Touch U in exchange for capital. To make this deal happen, Lowe reduced his ownership percentage, and Joelle Lowe gave up hers. Additionally, the parties agreed to form a holding company, Just Touch Holdings ("JTH") that would own 100% of Just Touch U. In June 2020, a Contribution Agreement was executed, giving life to appellee JTH; the ownership percentages were as follows: Montrell Lowe at 62%, Vita Boot at 28%, and Bryan St. Luce at 10%. The Contribution Agreement provided that Vita Boot could increase its ownership percentage upon contribution of additional capital. Up to June 2020, the parties are generally in agreement as to the facts. Thereafter, however, the two sides' versions of the facts depart dramatically.



Later in 2020, discussions arose for additional amendments to the limited liability company agreement, one that would change the ownership percentages to Lowe at 38%, Vita Boot at 52%, and St. Luce at 10%. In November 2020, two competing versions of an agreement titled "Amended and Restated Limited Liability Company Agreement" were circulated: a rough draft containing redlined

changes, the "Moore Agreement" and a subsequent version with significant differences, the "Moye Agreement".

St. Luce and Lowe allege they were involved in preparing the Moore Agreement with attorney Justin Moore on or about November 8, 2020. Moore prepared a redlined version of the proposed amended agreement and circulated it amongst the members of JTH. After the Moore Agreement was circulated, Vital retained Bradford Moye on behalf of JTH to redraft operating agreements for the entities. Moye prepared the Moye Agreement.

Under the Moye Agreement the parties retained ownership interests in JTH as in the Moore Agreement, but the Moye Agreement was substantially different in several respects: it reduced the meeting and voting requirements to 51 percent, modified notice requirements for meetings, contained new provisions requiring mandatory contributions, and caused an effective forfeiture of the ownership interests of members who did not make that contribution.

Though the circumstances of its execution were disputed, the Moye Agreement was signed by the parties in November 2020. Lowe and St. Luce contend that they were merely shown a signature page of an agreement and that they were told they were signing the Moore Agreement whereas in fact they signed the Moye Agreement. Vital, on the other hand, contends that Lowe and St. Luce fully understood that they were signing the Moye Agreement and agreed to its terms. Over the next 13 months, acting under the provisions of the Moye Agreement, Vital/Vita Boot, through significant capital contributions, unmatched by Lowe and St. Luce, took over management of JTH. In December 2021, Vital made a cash call to Lowe and St. Luce demanding that they contribute capital to cover costs. Lowe and St. Luce did not so contribute. In January 2022, Moye, on behalf of JTH, emailed Lowe and St. Luce telling them that their failure to make

3

additional capital contributions resulted in their ownership interests being reduced to zero.

On February 17, 2022, appellants St. Luce and Lowe filed their original petition and jury demand ("Petition"). The Petition was accompanied by St. Luce and Lowe's application for temporary restraining order, temporary injunction, and permanent injunction ("First Application") filed the same day seeking to prevent appellees from exercising managerial control of the Just Touch entities. The petition and application were amended, responses filed, and the court held an evidentiary hearing on the temporary injunction. Additionally, appellants requested that the trial court appoint a receiver to run the various Just Touch entities.

*Temporary Injunction Hearing*

Prior to the hearing, Vita Boot offered bank statements showing it contributed a total of $384,508 to the Just Touch entities, through wire transfers, beginning August 22, 2019 and continuing through November 12, 2020. The total contributions by Vita Boot to the Just Touch entities beginning in August 2019 and extending through November 30, 2021, exceeded $1,500,000.[1]

At the hearing on appellant's application for temporary injunction, only Moye and St. Luce testified. Each gave their historical accounts of the events surrounding the formation of the late 2020 "Amended and Restated Limited Liability Company Agreement".

On November 19, 2020, Moye emailed his version to Dr. Vital. The email

---

[1] Vita Boot also provided account statements showing it contributed more than $100,000 to JTH, including through JTH's wholly owned operating subsidiary, JTU, in June and July 2020, to meet its obligations under the Contribution Agreement.

stated, "[p]lease find the final JTH Agreement for execution tonight." Moye testified that he delivered the JTH Agreement by hand to St. Luce and Lowe:

> Q. Now, when you met with Mr. St. Luce and Mr. Lowe, did you go over the document with them?
>
> A. I presented them with the document and I told them that there had been some changes in the document prior to that Justin -- one of the Justin Moore drafts I had seen. I told them that they had -- you know, they could ask me general questions, but I also specifically told them, you know, if you want any changes, you know, if you -- or if you want anything further than just a high-level explanation, you should consult your own attorney.

St. Luce and Lowe allege that on November 19, 2020, they were only presented a signature page and that they were led to believe the signature page was associated with the Moore Agreement.

> Q. (BY MR. MASSEY) What do you think you were signing on November 19th?
>
> A. Could you pull up the document?
>
> Q. Absolutely. All right. So is this your signature down here at the bottom?
>
> A. Yes, it is.
>
> Q. And what did you think you were signing when you added that signature?
>
> A. The redline agreement from Justin Moore.
>
> Q. Did you get the complete document with this signature page that you executed?
>
> A. No. I was rushed to sign this document. This document was brought to me at my house and when I asked Dr. Vital, is this the same document? Yeah, the same document as, you know, Justin did, everything's good, da, da, da, da. So me being a trusting person, trusting your brother, trusting somebody that you believed in, trusting somebody that you felt had your back, you signed it. I did.

. . .

Q. So -- but you had -- at this point -- by the time you had signed this signature page, you had not met with Mr. Moye; is that correct?

A. No.

. . .

Q. What document did you think you were signing with this signature page?

A. The redline agreement that Justin Moore had sent me.

Q. And are you certain that you had not been presented with the whole document that defendants are saying is the first amended company agreement?

A. I'm certain I wasn't presented it. I was presented this signature page, because I read through the redline agreement thoroughly.

Q. And that was the night before?

A. Yes.

Moye, in an unsworn declaration, specifically denied the allegation that Lowe and St. Luce were only provided a signature page of the Moye Agreement. Between the two agreements drafted by the parties' counsel and offered into evidence, the only agreement offered as signed by the parties is the Moye Agreement.

On May 4, 2022, the trial court signed an order denying the application for temporary injunction and appointment of a receiver and this appeal followed.

## II. ISSUES AND ANALYSIS

In their sole issue, appellants challenge the trial court's order denying their application for temporary injunction.

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Id.* An applicant for a temporary

injunction is not required to establish that it will prevail on final trial. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). Where, as here, no applicable statute provides otherwise, to obtain a temporary injunction, the applicant must plead and prove three elements: (1) a claim against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204.

Whether to grant or deny a temporary injunction is within the trial court's sound discretion, and we reverse the trial court's grant or denial only if the trial court abused its discretion. *Id.* We must not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.* An abuse of discretion occurs when a court acts in an arbitrary or unreasonable manner, or without reference to guiding rules and principles. *Downer v. Aquamarine Operators*, 701 S.W.2d 238, 241–42 (Tex. 1985). In resolving evidentiary matters, a trial court does not abuse its discretion if some evidence reasonably supports the court's ruling. *See Abbott v. Anti-Defamation League Austin, Southwest, and Texoma Regions*, 610 S.W.3d 911, 916–917 (Tex. 2020); *Breitburn Operating, LP v. Parsons*, No. 14-21-00310-CV, 2023 WL 2257782, at *5 (Tex. App.—Houston [14th Dist.] Feb. 28, 2023, no pet. h.). A clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *See Abbott*, 610 S.W.3d at 916–917.

In seven counts, appellants' amended lawsuit asserted causes of action for breach of fiduciary duty, tortious interference, money had and received, legal malpractice, fraudulent inducement, and breach of contract. The lawsuit also seeks declarations regarding the ownership interests in JTH and fiduciary duties.

Appellants contend that the temporary injunction is supported by one bona fide dispute, which appellants describe as follows: "Whether appellant signed a

7

signature page for the [Moore Agreement] or the [Moye Agreement]." In appellants' view, the answer to this question does not matter, because regardless of the outcome, they prevail, as they explain:

> If the document [Lowe and St. Luce] signed was the signature page for the [Moore Agreement], then Appellee Vital/Vita Boot had no authority to require the members of JTH to contribute to the company or face forfeiture of their ownership interest. On the other hand, if the document signed by Lowe and St. Luce was the signature page for the Moye Company Agreement, then Vital/Vita Boot tricked them into signing it. [Vital] did not have the authority to make the contribution call because the contract was invalid.

Appellants misstate the issue. The issue is not whether appellants signed the Moore Agreement or signed the Moye Agreement. There's little question that the only signed agreement is the Moye Agreement. The issue, rather, is whether appellants knowingly signed the Moye Agreement or whether they were tricked into signing it, believing that they were signing the Moore Agreement. If appellants knowingly signed the Moye agreement, then Vital/Vita Boot had the contractual authority to do what it did, i.e., divest appellants of their ownership interest upon appellants' failure to contribute capital in response to the cash call.

The trial court was presented with ample evidence that appellants knowingly signed the Moye Agreement. Moye testified that he presented the complete agreement to appellants and told them that if they wanted to make changes or ask anything other than high level questions about the document that they should consult their own attorney. Indeed, in their verified Original Petition, appellants acknowledged that Moye provided his agreement to appellants before they signed it and told them to consult their own attorney if they wished to change it.

The trial court was presented with two contrasting versions of events. However, an abuse of discretion does not exist if the trial court is presented with

8

conflicting evidence, one side of which reasonably supports the trial court's ruling. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *De Los Salmones v. Anchor Devel. Group, LLC*, 2022 WL 1218541, \*3 (Tex. App.—Houston [14th Dist.] April 26, 2022). A party challenging the trial court's ruling on the requested relief must establish that, with respect to resolution of factual issues, the trial court reasonably could have reached but one decision. *Washington DC Party Shuttle, LLOC v. IGuide Tours*, 406 S.W.3d 723, 740 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Appellants have not established that the trial court abused its discretion in denying the requested relief.

## *Probable Right to Relief*

Appellants' focus on appeal mirrors their presentation of evidence at the temporary injunction hearing as it is centrally concerned with the signing of the Moye Agreement in late 2020. Virtually no evidence was offered in support of showing a probable right to relief on many of the claims asserted in its petition, which principally relate to events occurring after Vital/Vita Boot took control of the company. Today we do not disturb the trial court's finding that evidence was lacking to show a probable right to recovery with respect to the remaining claims that relate to the signing of the agreement, which include a derivative claim for legal malpractice against Moye, breach of fiduciary duties by Vital and Vita Boot and fraudulent inducement by all.

Appellants' legal malpractice claim required a showing of negligence on Moye's part with respect to his duties to the company. *See Zive v. Sandberg*, 644 S.W.3d 169, 174 (Tex. 2022) (a claim for legal malpractice is one for negligence, the malpractice plaintiff must establish the traditional elements of duty, breach, causation, and damages). Appellants made no such showing. The only testimony concerning Moye's duty to the Just Touch entities was Moye's testimony that

Vital, who funded the operations of JTH through Vita Boot, wanted specific changes in a new operating agreement and if St. Luce and Lowe did not agree to those changes Vital was no longer going to fund JTH. Moye testified that thus he understood, as JTH's attorney, it was in the JHT's best interest to make Vital's desired changes to what became the Moye Agreement. St. Luce and Lowe provided no testimony or other evidence about Moye's duty to JTH or any breach of that duty.

Appellants contend that the Moye Agreement was executed but procured by fraudulent misrepresentations. To prove fraudulent inducement, the appellants were required to show, among other elements, "actual and justifiable reliance." *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 558 (Tex. 2019). Whether a party's actual reliance is justifiable is ordinarily a fact question, but may be decided as a matter of law when circumstances exist under which reliance cannot be justified. *Id*. But a party cannot justifiably rely on a misrepresentation that conflicts with the terms of a signed contract. *Id*. The signed Moye Agreement, a writing that was materially different, constitutes a "red flag" that defeats justifiable reliance as a matter of law. *Id*.

With respect to the fiduciary duty claim, no evidence was presented as to a breach of any duty to JTH, and as a matter of law there was no duty owed by Vita Boot or Vital to St. Luce or Lowe. *See Matter of Est. of Poe*, No. 20-0178, ___ S.W.3d ___, 2022 WL 2183306, at *7 (Tex. June 17, 2022).

The trial court was free to make its own credibility determinations and disregard conflicting evidence as to the signature of the Moye Agreement. *See Kehoe v. Pollack*, 526 S.W.3d 781, 793-794 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("When a party signs a contract after having an opportunity to read the contract, the law presumes that the party knows and accepts all of the contract's

10

terms, even if the party chose not to read the contract.").

Even if we or another court may arrive at a different conclusion, the trial courts' order denying the temporary injunction was not an act "so arbitrary that it exceeded the bounds of reasonable discretion." *See Butnaru*, 84 S.W.3d at 204. Because some evidence supports the trial court's conclusion, appellants failed to establish a probable right to the relief sought and the trial court did not abuse its discretion by denying the temporary injunction. *See Insgroup, Inc. v. Langley*, No. 14-18-01071-CV, 2020 WL 1679401, at *6 (Tex. App.—Houston [14th Dist.] Apr. 7, 2020, no pet.)(affirming denial of temporary injunction based on failure to show probable right of recovery). Having so concluded, we need not address the question whether appellants showed a probable, irreparable harm.

We therefore overrule appellants' sole point of error.

### III. CONCLUSION

Having overruled appellants' sole point of error, we affirm the trial court's order denying the temporary injunction.


/s/     Randy Wilson
        Justice

Panel consists of Chief Justice Christopher, Justice Bourliot and Justice Wilson

11