### J. M. RADFORD V. F. F. McNENY ET AL.

No. 6802. Decided April 28, 1937.
Rehearing overruled June 9, 1937.
(104 S. W., 2d Series, 472.)

*W. E. Lessing* and *Ben L. Cox,* both of Abilene, for plaintiff in error.

The contract declared upon was not sufficiently definite in its terms to support a finding that the appellants had procured a person who was ready, able and willing to enter into a contract with Radford on the terms set out in the contract sued upon. Humble Oil & Refining Co. v. Strauss, 243 S. W. 534; 17 Tex. Jur., p. 793, Sec. 353.

*Touchstone, Wight, Gormley & Price,* of Dallas, for defendants in error.

A contract for future delivery of personal property may be sustained if the quantity is ascertainable otherwise with reasonable certainty. Risinger v. Clark, 246 S. W. 1092; Sayles v. City of Abilene, 295 S. W. 578.

MR. JUDGE MARTIN delivered the opinion of the Commission of Appeals, Section B.

The parties litigant will carry here their trial court designation.

Plaintiffs sued defendant for breach of a contract to pay them a brokerage commission. Judgment was entered for defendant upon a peremptory instruction. The Court of Civil Appeals reversed this judgment. McNeny et al. v. Radford, 70 S. W. (2d) 824. The Supreme Court granted a writ of error upon the assignment questioning the validity of the contract sued upon because too indefinite and uncertain to be made the basis of a cause of action. The contract is set out in haec verba in plaintiffs' petition, the material portions of which are:

"That for valuable consideration, said plaintiffs entered into the following written agreement with the defendant, J. M.

Radford, on or about November 19th, 1928, relative to the leasing of premises belonging to the defendant, located on the northwest corner of Pine and Third Streets in Abilene, Texas, on the terms and for the consideration expressed in said contract, which is as follows:

"McNeny & McNeny
REALTORS
CHAIN STORE LEASING

* * *

"City of *Abilene, Texas,* Population *30,000* Trade Territory *500,000* Street and No. *Northwest Corner Pine & Third Sts.* Term *30 yrs.* Lease Begins *Upon completion of building* Lease Price *$13,000 gross 10 yrs; $14,000 gross 10 yrs; $15,000 gross 10 yrs.* Size of Building *50 x 140 feet* Size of Lot *50 x 140 feet* No. of Stories *Alley Yes.* Size of Basement *None* Size of 2nd Floor *As specified* Name of Tenants, Rentals Paid, Expiration Dates: *Property at present is a vacant lot.* Taxes_____ Insurance Premiums_____ Owner's Allowance for Improvements *Owner to construct building with first and second floors as to specifications of chain.* Condition of Building *no building* Estimated Remodeling Costs *New building* Ceiling Heights: Basement_____ 1st Floor_____ Other Floors_____ Columns: (Location and Distance Between) *As specified* Location of Elevator *As specified* Location of Stairway *As Specified* No. of Stores *one* Character of Front *As specified* Party Walls *no* Brick Walls *Yes* Street Level *flush* Heating System: (Kind) *gas* Heat Furnished_____ Sale Price_____ Cash Payment _____ Balance_____ Owner *J. M. Radford* Phone_____ Owner's Address_____Radford Grocery Co., Abilene, Texas."

" 'McNeny & McNeny, Realtors
" 'Gentlemen:
" 'In consideration of the services to be rendered by you, I hereby give you the exclusive agency for the lease of my property, above described, for a period of sixty days from this date and thereafter until withdrawn on the terms indicated herein. And upon making said lease on such terms, or such others as I may accept, I agree to pay you a commission of 2% of the total consideration named in the lease.

" 'Witness (Signed) *H. N. Harrison* (Signed) *J. M. Radford.'*

"Subsequently the lease price was changed by said Radford from the amount above set out to $12,000.00 gross 10 years; $13,000.00 gross 10 years; and $14,000 gross 10 years. That pursuant to said contract, McNeny & McNeny undertook and, on or about April 1st, 1929, did secure a tenant, in accordance

with the terms of said contract above set out. That the tenant secured was Isaac Silver & Bro. Company, and this company was ready, able and willing to perform its portion of the lease contract, and Radford was so advised, but for some reason unknown to McNeny & McNeny, J. M. Radford failed and refused to carry out his portion of the lease contract.

### 2.

"As provided in the agreement above set out, said Radford had agreed to pay to the plaintiffs two (2%) per cent, commission of the total consideration named in the lease, amounting to SEVEN THOUSAND EIGHT HUNDRED ($7,800.00) DOLLARS.

### 3.

"That the plaintiffs have performed their portion of the contract but the defendant has failed and refused to perform his contract, to the damage of the plaintiffs in the sum of $7,-800.00."

It will be noted that plaintiffs elected to stand alone upon a breach of this contract as written, without even an explanatory averment. There is no allegation that a lease was made on terms satisfactory to the defendant. The specific averment is that plaintiffs did "secure a tenant in accordance with the terms of the contract above set out." Plaintiffs' cause of action, if any they have, is based alone upon a breach of the contract set out above. The plaintiffs thus hazarded their case upon the legal sufficiency of such contract. We agree with the following statement of the Court of Civil Appeals:

"It is unreasonable to suppose the parties contemplated that the lease should contain no other provisions. * * * It is clear enough that the contract of employment contemplated one or more other contracts between the defendant and third parties then unknown. * * * He was under no binding contract to Silver to construct the building and make the lease, and was, no doubt, within his legal rights in refusing to do so."

These inferences are, we think, compellable and necessary ones, if we construe the contract from its four corners in the light of what was then before the parties. Likewise they seem decisive against plaintiffs upon the cause of action pleaded. How could plaintiffs validly lease defendant's property under a contract admittedly insufficient and lacking in some of the terms of a valid leasing contract? The courts can not make a contract for the parties, and surely plaintiffs could not do so without authority. Their authority is to be found alone in the quoted contract. This contract implies that the lessor and lessee are thereafter to meet and agree upon all the terms and conditions

of a thirty-year contract of leasing. The obligation of defendant alleged was to pay plaintiffs upon their "making said lease on such terms," but the terms are not all inserted, or are so vaguely so as to be indefinite and uncertain. How then could plaintiffs have made a lease on terms authorized, when those omitted were unknown, and were to be agreed upon in future negotiations? It is a wholly illogical and unreasonable inference to say that plaintiffs were clothed by the terms of their written contract to go out in the world and select for defendant a thirty-year tenant and supply many essential terms of a landlord and tenant contract. If the petition could be construed as alleging a contract accepted by defendant, the evidence, we think, conclusively shows that defendant rejected immediately the only contract tendered. We construe the contract alleged as too indefinite and uncertain as a present contract to support a cause of action. At best it amounted only to an implied agreement to make a contract in the future with a prospective lessee found by plaintiffs for a lease contract of the general nature indicated, if all the terms could then be agreed upon.

The general rule is:

" * * * unless an agreement to make a future contract be definite and certain upon all the subjects to be embraced, it is nugatory. 'A contract between two persons, upon a valid consideration, that they will, at some specified time in the future, at the election of one of them, enter into a particular contract, specifying its terms, is undoubedly binding, and, upon a breach thereof, the party having the election or option may recover as damages what such particular contract to be entered into would have been worth to him, if made. But an agreement that they will in the future make such contracts as they may then agree upon amounts to nothing. An agreement to enter into negotiations, and agree upon the terms of a contract, if they can, can not be made the basis of a cause of action. There would be no way by which the court could determine what sort of a contract the negotiations would result in, no rule by which the court could ascertain whether any, or, if so, what, damages might follow a refusal to enter into such future contract. So, to be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations * * *. Where a final contract fails to express some matter, as, for instance, a time of payment, the law may imply the intention of the parties; but where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract,

there can be no implication of what the parties will agree upon.' Shepard v. Carpenter, 54 Minn. 153, 55 N. W. 906." St. Louis & S. F. R. Co. v. Gorman, 28 A. L. R. (N. S.), pp. 642-43. See also 6 R. C. L., pp. 616-617; 10 Tex. Jur., p. 176; Yerion v. Allison, 242 S. W. 270; Joseph v. Bostick, 276 S. W. 672.

" * * * there are three instances in which, or three methods by which, a broker may earn a commission under an agency contract for the sale or exchange of real estate: (1) By procuring from a purchaser a valid enforceable contract for sale or exchange of the property listed, on the terms proposed by the vendor; (2) By producing a purchaser to whom a sale or exchange is in fact made on terms satisfactory to the vendor; (3) By producing a purchaser, ready, able, and willing to buy or exchange on terms specified in the contract of employment, and who offers so to do." 7 Tex. Jur. 444.

The plaintiffs either in pleading or proof failed in this case to bring themselves under any one of the three rules above stated.

Judgment of Court of Civil Appeals reversed and that of trial court affirmed.

Opinion adopted by the Supreme Court April 28, 1937.

Rehearing overruled June 9, 1937.