**PARKER CHIROPRACTIC RESEARCH FOUNDATION, Appellant,**

v.

**FAIRMONT DALLAS HOTEL COMPANY, Appellee.**

**No. 18140.**

Court of Civil Appeals of Texas, Dallas.

Sept. 27, 1973.

Bill Cox Bader, Wilson, Menaker & Cox, Dallas, for appellant.

John Guittard, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

Parker Chiropractic Research Foundation, Inc. (hereinafter referred to as Parker) brought this action against Fairmont Dallas Hotel Company (hereinafter called Fairmont) in which it asked the court to require specific performance of a written contract between the parties. Fairmont asserted a specific defense that the contract, insofar as it related to a period of time from 1973 through 1980 was vague, incomplete, and unenforceable by virtue of the Statute of Frauds (Bus. & Com. Code

§ 26.01(b)(6), V.T.C.A.). At the conclusion of a nonjury trial the court rendered judgment denying Parker any relief.

The contract which Parker sought to have performed was entered into in December 1970 and concerned the lease of Fairmont Hotel space on various dates to Parker for conducting seminars in chiropractic research. The agreement which is the source of the controversy between the parties consists of three pages and was admittedly prepared by laymen and not by the attorneys for either of the parties. The first part of the agreement is a two-page letter dated December 18, 1970, from Fairmont to Parker. In the first paragraph of the letter Fairmont confirms to Parker five dates in 1971 for the holding of seminars by Parker in the hotel. On each of the dates Fairmont agrees to hold 550 rooms, as well as public meeting rooms, for Parker. It is then recited that the sleeping room rates will be $14 single and $20 twin for all listed meetings. It is then stated that at the conclusion of the seminar the hotel will make a donation to Parker of $4 per room per day for each room rented. Fairmont agreed to furnish Parker twenty complimentary rooms and ten parking spaces in the garage. Fairmont agreed to render certain aid and assistance in the promotion of the seminars and to assist in providing microphones, projectors and screens. Fairmont contracted to provide a "nice banquet" at the rate of $5 per person, including gratuity and tax. The other meals would cost $4.50 per person. Special corkage prices were set forth in the agreement. The letter then concluded with the following two paragraphs:

"It is further agreed that these room, meal and corkage prices and the Fairmont donation to the Parker Foundation are subject to change beginning in 1972, such changes (either increase or decrease) being based on the ratio between our present public posted room rates and convention menu charges and the special rates being provided the Parker Founda-

tion for 1971, and the Fairmont Hotel will provide a four months notice of any change of this agreement with the PCRF for its confirmed bookings beyond 1971. It is further understood and agreed that the hotel will confirm all future bookings through 1980 for the PCRF Seminars within the next few weeks.

To the best of my knowledge this letter covers our verbal agreement completely. The original is for your file and a copy attached is for your signature which will confirm our agreement within terms of this letter."

The letter was signed Fairmont Hotel by "Chris White, Vice President." Under Mr. White's signature appears the following paragraph:

"The Parker Chiropractic Research Foundation will headquarter at the Fairmont Hotel in Dallas for its January 20–24, May 12–16, June 29–July 4, September 15–19 and November 10–14, 1971 Seminars in accordance with the terms of this letter dated December 18, 1970."

The contract was then signed by James W. Parker as President of the Foundation.

The second part of the agreement is a one-page typewritten letter, dated December 19, 1970. In the first paragraph thereof it is stated that this agreement is to be added to the original letter agreement between Fairmont and Parker dated December 18, 1970. The second paragraph of the letter reads as follows:

"It is for the purpose of detailing a change in the original agreement. It is hereby agreed and understood by and between the Fairmont Hotel and the PCRF that all rooms used by the attendees of the PCRF for their January and July Seminars during the years of 1971, 1972 and January, 1973, will be rented at the full double room rate of $20.00 per day whether occupied by one or more persons; that the Parker Foundation will so advise their members. This agreement to charge $20.00 for all rooms whether

occupied by one or more persons does not apply to Seminars held other than January or July."

It is then recited that in consideration of this agreement and commitment by Parker the Fairmont agrees to extend the terms and agreements contained in the letter of December 18, 1970, to include seminars on specified dates in January, March, July, September and November of 1972 and from January 17 to 21, 1973. The concluding paragraph reads:

"The reason for this agreement is to provide Fairmont an additional benefit in order to commit their hotel to these arrangements through January, 1973."

This agreement is signed by the same parties who executed the first agreement.

Testimony was introduced during the trial to show without dispute that Fairmont and Parker carried out the terms of their agreement through January 1973 but Fairmont refused to acknowledge any liability after that date. Witnesses for Parker testified that it was the intention of Parker that the agreement should extend through 1980. Testimony was introduced on behalf of Fairmont to the effect that Fairmont had no such intention of being bound by the contract longer than January 1973. It was undisputed that after the execution of the contract described above there had never been a confirmation from Fairmont of any bookings to Parker through 1980.

The trial court found that the parties had entered into the written contract on December 19, 1970, consisting of the two-part, three-page agreement described above; that pursuant to such agreement Fairmont had furnished hotel space to Parker for the seminars through January, 1973; that Parker had made demand on Fairmont for additional seminar dates after January 1973 and through 1980, and that Fairmont had failed and refused to comply with such request; that Parker has no adequate remedy at law. The court also found that the agreement between the parties intended to leave for future negotiation in the succeeding weeks specific terms and dates for the period after January 22, 1973, and through 1980 and that neither party intended at that time to be bound to specific dates and terms for such period.

The court concluded, as a matter of law, that the agreement with respect to the period from January 22, 1973, through 1980 was unenforceable as an agreement to contract in the future; that the terms and dates for seminar bookings in the period from January 22, 1973, through 1980 are too vague, indefinite and uncertain to warrant specific performance for such period; and that the agreement between the parties is an agreement not to be performed within one year and is therefore unenforceable since it is a violation of the Statute of Frauds of Texas.

Appellant Parker seeks reversal of the judgment against it in nine points of error which are grouped into two categories. In its first group of points Parker contends that the trial court erred in finding as a fact that Fairmont is not obligated to furnish seminar space and dates to Parker after January 1973, since the evidence shows that the parties intended that the agreement provide services through the year 1980. Parker also contends that the trial court was in error in holding that the contract was null and void and unenforceable because "all of the testimony given clearly showed the contract was enforceable through 1980." In its second group of points Parker argues that the trial court erred in finding as a conclusion of law that the terms and dates for seminar bookings in the period between January 22, 1973, and 1980 were too vague and indefinite and uncertain to warrant specific performance for such period. Parker argues in these points that the trial court's conclusions of law concerning the applicability of the Statute of Frauds is wrong.

Appellee Fairmont counters with the contention that (1) the contract is unenforceable as a violation of the Statute of

Frauds from January 1973 through 1980 because none of the essential terms for that period are specified in writing; (2) that the language of the agreement concerning confirmation of seminar dates through 1980 renders it unenforceable because such provisions lack definiteness and certainty as to essential contract terms for such period and affirmatively demonstrate the intention of both parties to leave such terms to be resolved through future negotiations; and (3) the trial court correctly exercised its equitable discretion by concluding on sufficient evidence that the essential terms and dates for future bookings from January 1973 through 1980 were too vague, indefinite and uncertain to justify a decree of specific performance after 1973.

Well defined and settled principles of law govern our resolution of the questions thus presented. Those rules which have application to the granting of equitable remedy of specific performance are:

■ (1) A decree of specific performance must be based on a valid completed contract that possesses the essentials of a binding legal obligation. It will not be granted where material terms of the contract were not agreed to but left to future adjustment. 52 Tex.Jur.2d, Specific Performance, § 24, pp. 545–546;

■ (2) A decree for specific performance of a contract is not a matter of right, but rests in the sound discretion of the court; a discretion not arbitrary but judicial, and exercised under the established doctrines and settled principles of equity. Bergstedt v. Bender, 222 S.W. 547 (Tex. Com.App., 1920); Restatement of the Law of Contracts § 359;

■ (3) The right to the remedy depends upon certain conditions: (a) the contract must be reasonably certain, unambiguous and based upon valuable considerations; (b) it must be fair in all its parts, free from misinterpretation, misapprehen-

son, fraud, mistake, imposition or surprise; (c) the situation of the parties must be such that specific performance will not be harsh or oppressive; and (d) the one seeking the remedy must come to the court with clean hands. Restatement of the Law of Contracts § 367; Riggins v. Trickey, 46 Tex.Civ.App. 569, 102 S.W. 918 (1907); 52 Tex.Jur.2d, Specific Performance, § 68, pp. 606–607 and § 69, pp. 608–609;

■ (4) Specific performance will not be decreed unless the terms of the contract are so expressed that the court can determine with reasonable certainty what is the duty of each party and the conditions of each performance. The usual aids to interpretation may be utilized by the court to determine the true agreement of the parties. Restatement of the Law of Contracts § 370; Bendalin v. Delgado, 406 S.W.2d 897 (Tex.Sup.1966); 12 Texas L.Rev. 359–360.

Both parties have, in oral argument before this court, agreed that the contract in question is unambiguous. We have reviewed the agreement and agree with counsels' interpretation that the same is clear and unambiguous in its terms. Such being true, we are governed by the usual aids to interpretation applied to contracts:

■ (1) It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the court. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193 (Tex.Sup. 1962); City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515 (Tex.Sup. 1968);

■■ (2) Where the contract is unambiguous the court will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. Woods v. Sims, 154 Tex. 59, 273 S. W.2d 617 (1954); 4 Williston on Contracts

§ 610; Restatement of the Law of Contracts § 230;

■ (3) The parties to an instrument intend every clause of the contract to have some effect and in some measure to evidence their agreement. Restatement of the Law of Contracts § 230;

■ (4) In construing a contract the court is to take the wording of the instrument and consider the same in the light of the surrounding circumstances and then apply the pertinent rules of construction thereto to settle the meaning of the contract. Spence & Howe Construction Co. v. Gulf Oil Co., 365 S.W.2d 631 (Tex.Sup. 1963); City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515 (Tex.Sup. 1968);

■ (5) The contract in question must be complete in itself in every material detail. It must contain the essentials of a contract so that they may be ascertained from the writing without resort to parol testimony. Denman v. Hall, 144 Tex. 633, 193 S.W.2d 515 (1946); Buratti & Montandon v. Tennant, 147 Tex. 536, 218 S.W. 2d 842 (1949);

■ (6) An agreement to make a future contract must be definite and certain upon all the subjects to be embraced in such future agreement. Thus, to be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations. Where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon. Radford v. McNeny, 129 Tex. 568, 104 S.W.2d 472 (1937); Page & Wirtz Construction Co. v. Van Doran Bri-Tico Co., 432 S.W.2d 731 (Tex.Civ.App., Amarillo, 1968, writ ref'd n. r. e.); Friedrich v. Moke, 296 S.W.2d 565 (Tex.Civ. App., San Antonio, 1956, writ ref'd n. r. e.).

Having reviewed the entire record in this case in the light of the established guidelines enumerated above we are convinced, and so hold, that the trial court was correct in rendering judgment denying Parker the relief sought against Fairmont. We also find and hold that there is adequate evidence of probative force to support each of the findings of fact of the trial court. We also overrule appellant's contention that the court's findings of fact are contrary to the overwhelming weight and preponderance of the evidence.

■ The circumstances apparent in this record which existed at the time of the execution of the contract in question make it quite evident to us that the parties entered into the agreement with the intention of following established and agreed to dates for the seminars in question through January 1973. This part of the agreement was accomplished and no complaint is advanced by appellant relating thereto. The question then presented is whether the alleged promise on the part of Fairmont to furnish hotel space through 1980 is an agreement not to be performed within one year and which would therefore run counter to the express provision of the Texas Statute of Frauds, Bus. & Com.Code § 26.-01(b)(6). Appellant Parker points to but one sentence in the contract as a basis for contending that the parties intended to be bound through 1980. This sentence reads: "It is further understood and agreed that the hotel will confirm all future bookings through 1980 for the PCRF Seminars within the next few weeks." The trial court correctly concluded as a matter of law that this sentence in the contract did not take the same out of the purview of the Statute of Frauds. We think the court correctly did so because the contract as a whole, and especially the questioned sentence set forth above, contains none of the essential contract terms for the period of January 1973, through 1980. During the life of the contract from 1970 through January 1973, the parties very carefully agreed on many specific details concerning

dates, room charges, number of rooms and spaces available, number of complimentary rooms and parking spaces, meal prices and basic menus, corkage fees, and duration of the individual seminars. It is quite obvious that none of these specified details are set forth in the contract with reference to the period of time from January 1973 through 1980. Instead, the parties specifically say that the confirmation through 1980 will be made "within the next few weeks." It is undenied that this was never done so that the various detailed provisions of the contract in the future from January 1973 cannot be said to have been agreed upon by the parties. Not having been agreed upon they cannot be supplied by parol. As stated by Chief Justice Hickman in Buratti & Montandon v. Tennant, 147 Tex. 536, 218 S.W.2d 842 (1949), the essential elements of a contract required to be in writing may never be supplied by parol because to permit same would practically set at naught the Statute of Frauds.

The parties themselves acknowledge in the contract that the letter agreement "covers our verbal agreement completely." This agreement, when said to relate to any obligation on the part of Fairmont following January 1973, obviously is so vague and indefinite that the trial court was manifestly justified in finding that the parties did not intend to contract for the eight-year period until future negotiations had been completed. The record does not justify appellant's contention that the parties intended by the letter agreement to be bound by the specific provisions contained therein as relating to seminars to be held between January 1973 and 1980. The most that can be said for the sentence in the contract relied upon by appellant is that it constitutes a statement by the parties of their mutual expectation to carry on further negotiations "within the next few weeks" in an effort to resolve the details of seminar dates and terms thereof through 1980. Such statement reflected a hope which obviously did not materialize and cannot reasonably be said to constitute a binding agreement which would cover an eight-year period in the future.

To give the disputed sentence the validity and construction urged by appellant Parker would impose upon the trial court, and this court, the obligation of making a new contract for the parties. As Judge A. B. Martin said in Radford v. McNeny, 129 Tex. 568, 104 S.W.2d 472, the courts cannot make contracts for the parties and where the agreement to make a future contract is not definite and certain upon all the subjects to be embraced it is nugatory.

Inasmuch as Parker seeks specific performance on an obligation claimed to be binding for a period of approximately eight years in the future a greater degree of certainty is required to warrant a decree of specific performance than in a case seeking recovery of damages. Palmer v. Katz, 210 S.W.2d 451 (Tex.Civ.App., Eastland, 1948, writ ref'd n. r. e.); Kirkwood & Morgan, Inc. v. Roach, 360 S.W.2d 173 (Tex.Civ.App., San Antonio, 1962, writ ref'd n. r. e.). In Nash v. Conatser, 410 S.W.2d 512 (Tex.Civ.App., Dallas, 1966), we affirmed the trial court's judgment which denied specific performance of an alleged contract for the sale of an insurance agency where the proposed contract contained material provisions not previously agreed upon between the parties.

In our opinion the trial court did not commit reversible error, in the exercise of its discretion, in refusing to grant specific performance of the alleged contract relied upon by Parker. The trial court, and this court, are bound by the stated intent of the parties as manifested within the four corners of the instrument itself. Steeger v. Beard Drilling, Inc., 371 S.W.2d 684 (Tex.Sup.1963). The obvious intent of the parties, as manifested by the contract itself, was that material provisions of any agreement dealing with the period of time from 1973 through 1980 would be worked out and settled by future negotiations of the parties.

We have carefully reviewed all of the points of error advanced by appellant Parker and find the same to be without merit.

The judgment of the trial court is affirmed.

Affirmed.

GUITTARD, J., not sitting.