

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00083-CV

_____

SUGAR LAND URBAN AIR, LLC, UATP MANAGEMENT, LLC,
ZOYA ENTERPRISES, LTD., AND UA HOLDINGS, LLC, Appellants

V.

HAMZA LAKHANI, Appellee

On Appeal from the 127th District Court
Harris County, Texas
Trial Court No. 2020-74799

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

After Hamza Lakhani filed a suit for personal injuries that he allegedly suffered at Urban Air Adventure Park (Adventure Park) in Sugar Land[1] against twelve named defendants, Sugar Land Urban Air, LLC (Sugar Land), UATP Management, LLC (UATP), Zoya Enterprises, Ltd. (Zoya), and UA Holdings, LLC (UA), filed a motion to abate and compel arbitration (Arbitration Motion) based on an arbitration agreement signed by Lakhani. After a hearing, the trial court denied the motion. Because UATP, Zoya, and UA did not establish that there was a valid arbitration agreement between Lakhani and them, we affirm the trial court's order as to UATP, Zoya, and UA. However, because the arbitration agreement is enforceable as to Sugar Land, except for a provision prohibiting the award of punitive or exemplary damages, we excise the provision prohibiting the award of punitive or exemplary damages from the arbitration agreement, reverse the trial court's judgment as to Sugar Land, and remand this case to the trial court with instructions to enter an order, consistent with this opinion, compelling arbitration of Lakhani's claims against Sugar Land.

I.    Background

Lakhani's live petition at the time of the hearing alleged that he was the invitee of Sugar Land, UATP, Zoya, and UA, among others, who were either the franchisor(s) or the franchisee(s) operating Adventure Park, when he suffered serious injuries in the ball pit

[1]Originally appealed to the Fourteenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Fourteenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

attraction. He asserted causes of action against these defendants for negligence, gross negligence, and premises liability and sought both consequential and exemplary damages.

Sugar Land, UATP, Zoya, and UA filed their Arbitration Motion and asserted that, prior to the incident in the ball pit attraction, Lakhani executed a document titled Release and Indemnification Agreement (the Release) that contained an agreement to arbitrate any dispute or claim arising out of any personal injury stemming from his use of the facilities.[2] Based on the arbitration agreement, these defendants asked the trial court to abate the proceedings and to

---

[2]The arbitration clause is contained in section 6 of the Release and reads:

> 6.　　Dispute Resolution.
> A.　　Arbitration. Any dispute or claim arising out of or relating to this Agreement, breach thereof, the Premises, Activities, property damage (real or personal), personal injury (including death), or the scope, arbitrability, or validity of this arbitration agreement (Dispute) shall be brought by the parties in their individual capacity and not as a plaintiff or class member in any purported class or representative capacity, and settled by binding arbitration before a single arbitrator administered by the American Arbitration Association (AAA) per its Commercial Industry Arbitration Rules in effect at the time the demand for arbitration is filed. Judgment on the arbitration award may be entered in any federal or state court having jurisdiction thereof. The arbitrator shall have no authority to award punitive or exemplary damages. If the Dispute cannot be heard by the AAA for any reason, the Dispute shall be heard by an arbitrator mutually selected by the parties. If the parties cannot agree upon an arbitrator, then either party may petition an appropriate court to appoint an arbitrator. Arbitration and the enforcement of any award rendered in the arbitration proceedings shall be subject to and governed by 9 U.S.C. § 1 et seq.
> B.　　Waiver of Jury Trial. **TO THE EXTENT PERMITTED BY LAW, ADULT PARTICIPANT AND URBAN AIR KNOWINGLY, willingly, AND VOLUNTARILY, WITH FULL AWARENESS OF THE LEGAL CONSEQUENCES, AFTER CONSULTING WITH COUNSEL (OR AFTER HAVING WAIVED THE OPPORTUNITY TO CONSULT WITH COUNSEL) AGREE TO WAIVE THEIR RIGHT TO a JURY TRIAL OF ANY DISPUTE AND TO RESOLVE ANY AND ALL DISPUTES THROUGH ARBITRATION**. The right to a trial by jury is a right parties would or might otherwise have had under the Constitutions of the United States of America and the state in which the Premises is located.

3

compel the matter to arbitration. Attached to the Arbitration Motion were copies of plaintiff's original petition and the Release containing the arbitration agreement.

In his live response to the Arbitration Motion, Lakhani asserted that UATP, Zoya, and UA were not parties to the Release and that the arbitration agreement contemplated arbitration only between the parties to that agreement, i.e., Sugar Land and Lakhani. He claimed that, as non-signatories, UATP, Zoya, and UA had not shown that they were entitled to compel arbitration. In addition, Lakhani asserted that (1) the movants failed to demonstrate that the arbitration agreement was valid and enforceable, (2) the agreement was illusory and ambiguous because it refers to non-existent arbitration rules, (3) the agreement was procedurally unconscionable because of Lakhani's age and other factors at the time of execution, and (4) the agreement was substantively unconscionable because it contained a pre-injury release of his gross negligence claims and curtailed remedies available under Texas law. The response was supported by Lakhani's affidavit in which he averred that (1) he was nineteen years old when he executed the Release, (2) he had only completed his high school education, (3) he had no understanding of arbitration and did not understand the differences between a trial by jury and an arbitration hearing, (4) he did not discuss the terms of the Release with any employee of Sugar Land or any defendant, (5) his signature appeared on the Release when he clicked accept with no requirement to review or accept the terms of the arbitration agreement, and (6) signing the Release was a condition for access to the facility.

4

Sugar Land, UATP, Zoya, and UA filed a reply in support of their Arbitration Motion in which they addressed Lakhani's arguments that they had not shown the existence of a valid arbitration agreement or that Lakhani's claims against them were within the scope of the agreement and that the agreement to arbitrate was illusory, procedurally unconscionable, and substantively unconscionable. The reply did not address Lakhani's contention that UATP, Zoya, and UA, as non-signatories to the arbitration agreement, could not compel arbitration.[3]

At the hearing on the Arbitration Motion, the trial court began by pointing out that none of the defendants had responded to Lakhani's contention that the arbitration agreement was only between Lakhani and Sugar Land and that Sugar Land had conceded that point. The attorney for Sugar Land, UATP, Zoya, and UA responded, "That is correct." After discussions of other issues, the trial court indicated that it was likely to grant arbitration for Sugar Land, and after Sugar Land's attorney informed him that she also represented UATP, Zoya, and UA, the trial court asked, "But the only -- the only parties to this contract are Mr. Lakhani and Sugar Land . . . correct?" The attorney for Sugar Land, UATP, Zoya, and UA responded, "That is correct." Ultimately, the trial court entered an order denying the Arbitration Motion as to Sugar Land, UATP, Zoya, and UA, without stating the grounds for the denial.

---

[3]In their reply, as in their brief on appeal, Sugar Land, UATP, Zoya, and UA took the unusual position that Lakhani did not dispute that he had an arbitration agreement with all of these defendants, even though Lakhani's response clearly contended that the arbitration agreement was only between Sugar Land and him and that, as non-signatories to that agreement, UATP, Zoya, and UA had not shown that they could compel arbitration.

5

## II. Standard of Review

"The Federal Arbitration Act (FAA) generally governs arbitration provisions in contracts involving interstate commerce." *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding) (citing 9 U.S.C. § 2). "Parties may also expressly agree to arbitrate under the FAA." *Id.* (citing *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605–06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam)). The arbitration agreement in this case specifically provided that the arbitration "shall be subject to and governed by 9 U.S.C. § 1 et seq.;" i.e., the FAA.

The determination of a motion to compel arbitration involves a two-step process. First, "[a] party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration clause, and (2) the claims in dispute fall within that agreement's scope. *Id.* (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)). "If the party seeking to compel arbitration meets this burden, the burden then shifts, and to avoid arbitration, the party opposing it must prove an affirmative defense to the provision's enforcement, such as waiver." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (citing *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014)).

We apply state law in determining whether an arbitration agreement is "unenforceable on 'such grounds as exist in law or in equity for the revocation of any contract.'" *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014) (quoting 9 U.S.C.A. § 2). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to

6

arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996))). For that reason, only "if the circumstances would render any contract unconscionable under Texas law" are they "appropriate to invalidate the agreement to arbitrate as well." *Id.* (quoting *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding)).

"We review a trial court's order denying a motion to compel arbitration for abuse of discretion." *Henry*, 551 S.W.3d at 115 (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding)). "We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo." *Id.* (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 642–43). "Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo." *Id.* (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 642–43). When the trial court does not state the grounds for its denial of a motion to compel arbitration, "we must uphold the trial court's ruling on any legal theory supported by the evidence." *Kehoe v. Pollack*, 526 S.W.3d 781, 791 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *In the Estate of Guerrero*, 465 S.W.3d 693, 701 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc)).

7

### III. Analysis

#### A. UATP, Zoya, and UA

As movants seeking to compel arbitration, UATP, Zoya, and UA had the initial burden to establish (1) the existence of a valid arbitration clause between them and Lakhani and (2) that Lakhani's claims against them were within the scope of the arbitration agreement. *See In re Rubiola*, 334 S.W.3d at 223. As Lakhani pointed out in his response to the Arbitration Motion, UATP, Zoya, and UA were not parties to the Release or to the arbitration agreement.[4] "Whether [non-parties] may enforce an arbitration agreement's terms is a question within the first element." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018) (citing *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 525 (Tex. 2015)). Further, "[w]hether a non-signatory can compel arbitration pursuant to an arbitration clause questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide." *In re Rubiola*, 334 S.W.3d at 224 (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding); *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (per curiam)).

---

[4]The Release recites, in relevant part, "This Release and Indemnification Agreement (Agreement) is entered into by the Adult Participant (Lakhani) . . . in favor of Sugar Land Urban Air LLC." The arbitration agreement is contained in section 6 of the Release and recites that "[a]ny dispute or claim arising out of or relating to this Agreement, breach thereof, the Premises, Activities, property damage (real or personal), personal injury (including death), or the scope, arbitrability, or validity of this arbitration agreement (Dispute) shall be brought by the parties in their individual capacity." Although section 5 of the Release includes, *inter alia*, Sugar Land, UATP, and UA among those being released and indemnified, section 5 provides that these entities are referred to collectively as Protected Parties. Thereafter, sections 7, 9, and 10 refer to these Protected Parties. However, the arbitration agreement does not mention the Protected Parties, but rather only refers to "parties," i.e., the parties to the Release, which were Lakhani and Sugar Land.

Generally, "an arbitration clause cannot be invoked by a non-party to the arbitration contract." *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 532 (5th Cir. 2000) (Dennis, Circuit Judge, dissenting)). "[The] policy favoring arbitration is strong, but it alone cannot authorize a non-party to invoke arbitration." *Id.* (quoting *Grigson*, 210 F.3d at 532). That being the case, UATP, Zoya, and UA had the burden to "establish that they have a valid legal right to enforce [the Release]'s arbitration agreement even though they are not parties to that contract." *Id.*

Although the Texas Supreme Court has recognized several scenarios in which arbitration with non-signatories, or non-parties to the arbitration agreement, may be required,[5] UATP, Zoya, and UA did not assert any theory under which they should be able to compel Lakhani to arbitration in either the Arbitration Motion or in their reply in support of the Arbitration Motion. In addition, when the trial court pointed out at the hearing on the motion that there had been no response to Lakhani's contention that the agreement to arbitrate was only between Sugar Land and Lakhani, the attorney for Sugar Land, UATP, Zoya, and UA agreed that the only parties to

---

[5]*See Jody James Farms*, 547 S.W.3d at 633 ("Courts have also articulated six scenarios in which arbitration with non-signatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary." (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739)).

9

the agreement were Sugar Land and Lakhani and offered no theory under which UATP, Zoya, and UA should be able to compel arbitration.[6]

Our review of this record shows that UATP, Zoya, and UA did not carry their burden in the trial court to establish that they had a valid legal right to enforce the arbitration agreement even though they are not parties to that contract. *See id.* at 524; *see also Kehoe*, 526 S.W.3d at 792. For that reason, we find that the trial court did not err in denying UATP's, Zoya's, and UA's motion to compel arbitration. *See Kehoe*, 526 S.W.3d at 792.

**B.      Sugar Land**

At trial, Lakhani generally asserted that Sugar Land had not met its burden to show that there was a valid agreement to arbitrate between Sugar Land and Lakhani or that Lakhani's claims against Sugar Land were within the scope of the agreement. "[A]n agreement to arbitrate is valid under the FAA if it meets the requirements of the general contract law of the applicable state." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 347 (Tex. 2008) (orig. proceeding) (citing *In re*

---

[6]UATP, Zoya, and UA argued in their reply, as they do on appeal, that, because Lakhani's claims against them arose from his use of the premises and involved personal injuries, they should be arbitrated since the agreement to arbitrate included "[a]ny dispute or claim arising out of or relating to . . . the Premises, Activities, [or]. . . . personal injury." However, "[a]lthough [Lakhani]'s claims may fall within the scope of the agreement, the scope of the arbitration clause 'does not answer whether [Lakhani] must arbitrate' with" UATP, Zoya, and UA. *G.T. Leach Builders*, 458 S.W.3d at 525 (quoting *In re Kellogg Brown & Root*, 166 S.W.3d at 739–40).

In their reply brief on appeal, UATP, Zoya, and UA, for the first time, assert a theory under which they should be able to compel arbitration—that the intent of the parties was to require Lakhani and the owner/operator of the facility to arbitrate any dispute the arose out of use of the facility. UATP, Zoya, and UA reason that, because Lakhani alleged that they, along with Sugar Land and others, were the owner/operators of the facility, they can compel arbitration of Lakhani's claims against them. But UATP, Zoya, and UA do not point to any language in the arbitration agreement, and do not cite any caselaw, that supports this contention. In *In re Rubiola*, the one case cited by UATP, Zoya, and UA, the Texas Supreme Court held that the non-signatories in that case could compel arbitration because they were included in the arbitration agreement's broad definition of parties, and therefore, the arbitration agreement expressly provided that they were to be parties to that agreement. *In re Rubiola*, 334 S.W.3d at 224–25. The arbitration agreement in this case contains no such broad definition of parties.

10

*AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding) (per curiam) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995))). "In determining the validity of an agreement to arbitrate under the FAA, courts must first apply state law governing contract formation." *Id.* (citing 9 U.S.C.A. § 2; *First Options*, 514 U.S. at 944). "[S]tate law, whether of legislative or judicial origin, is applicable [to the determination of the validity of an agreement to arbitrate] if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Id.* (second alteration in original) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)).

To determine the enforceability of an agreement to arbitrate, a state court neutrally applies its own contract law to determine "whether an enforceable agreement exists in the first instance" and, if so, "whether 'generally applicable contract defenses . . . may be applied to invalidate arbitration agreements without contravening' the policies of the FAA." *Id.* at 348 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "[O]nce an enforceable contract to arbitrate is found, there is a strong federal presumption in favor of arbitration such that myriad doubts—as to waiver, scope, and other issues not relating to enforceability—must be resolved in favor of arbitration." *Id.* (citing *In re FirstMerit Bank*, 52 S.W.3d 749, 752 (Tex. 2001) (orig. proceeding); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex. 1995) (orig. proceeding) (per curiam)).

## 1. Sugar Land Carried Its Initial Burden

Sugar Land attached Lakhani's original petition and the Release to its Arbitration Motion. The Release showed that it was entered into and signed by Lakhani as the adult participant in favor of Sugar Land and stated that the consideration was Sugar Land allowing Lakhani access to Adventure Park and the ability to participate in the activities at Adventure Park. The agreement to arbitrate, as set forth earlier, stated in unambiguous language that the agreement was between these parties and that they agreed to settle

> [a]ny dispute or claim arising out of or relating to [the] Agreement, breach thereof, the Premises, Activities, property damage (real or personal), personal injury (including death), or the scope, arbitrability, or validity of [the] arbitration agreement . . . by binding arbitration before a single arbitrator administered by the American Arbitration Association (AAA) per its Commercial Industry Arbitration Rules in effect at the time the demand for arbitration [was] filed.

Lakhani's original petition, like its live petition at the time of the hearing, alleged that he was the invitee of Sugar Land, who was either the franchisor or the franchisee operating the premises, when Lakhani suffered serious injuries in the ball pit attraction. He asserted causes of action against Sugar Land for negligence, gross negligence, and premises liability and sought both consequential and exemplary damages.

This evidence showed that, at least in the first instance, there was an enforceable agreement to arbitrate Lakhani's claims against Sugar Land. *See id.* For that reason, we find that it would be error for the trial court to deny Sugar Land's Arbitration Motion on the basis that Sugar Land had not carried its burden to show that there was an enforceable agreement to arbitrate Lakhani's claims against Sugar Land. Nevertheless, before applying the federal

presumption in favor of arbitration, we must determine whether any generally applicable contract defenses will invalidate the enforceability of the agreement to arbitrate or any of its clauses. *See id*.

### 2. Lakhani Did Not Show that the Arbitration Agreement Was Illusory or Ambiguous

Lakhani asserted at trial and on appeal that the arbitration agreement was illusory and ambiguous. Lakhani argued that the agreement provided that the arbitration was to be administered per AAA's "Commercial Industry Arbitration Rules in effect at the time the demand for arbitration [was] filed." Lakhani pointed out that AAA's website references "Commercial Arbitration Rules and Mediation Procedures," "Construction Industry Arbitration Rules and Mediation Procedures," and "Consumer Arbitration Rules," but makes no mention of "Commercial Industry Arbitration Rules." *See* AMERICAN ARBITRATION ASSOCIATION, Rules, Forms, and Fees (2022), https://www.adr.org/Rules (last visited Mar. 22, 2022). Lakhani, both at trial and on appeal, failed to cite any appropriate authority holding that an error in referencing the applicable rules to be used in an arbitration renders the arbitration agreement illusory or ambiguous. Rather, "[a]n arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam) (citing *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (orig. proceeding) (per curiam) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 570 (Tex. 2002) (orig. proceeding))).

13

Further, not all ambiguous terms will render an agreement unenforceable. "To be enforceable, a contract must address all of its essential and material terms with 'a reasonable degree of certainty and definiteness.'" *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (citing *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955)). "[A] contract must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound." *Id.* (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)). "However, a contract need only be definite and certain as to those terms that are 'material and essential' to the parties' agreement." *Id.* (citing *Radford v. McNeny*, 104 S.W.2d 472, 475 (1937); *see also T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("The material terms of the contract must be agreed upon before a court can enforce the contract.")). "Material and essential terms are those that parties would reasonably regard as vitally important elements of their bargain and are determined on a case-by-case basis." *Tamasy v. Lone Star College Sys.*, 635 S.W.3d 702, 709 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

Lakhani did not argue at trial or on appeal that identification of the AAA rules that would govern the arbitration proceeding was a material and essential term of the parties' arbitration agreement. Nor did he explain the differences between AAA's arbitration rules or how any differences would materially affect the arbitration procedure.[7] Further, the parties' agreed to allow the arbitrator to settle any dispute arising out of or relating to the arbitration agreement.

---

[7]Lakhani also asserted that the arbitration agreement was ambiguous because he did not know the scope of costs associated with the arbitration rules, citing *In re Poly-Am., L.P.*, 262 S.W.3d at 356. However, Lakhani did not offer any evidence regarding the costs of the different arbitration rules or that any such costs would be prohibitive, and he did not demonstrate how such costs would be a material and essential term of the arbitration agreement.

14

For these reasons, we hold that, in this case, any ambiguity regarding which of AAA's arbitration rules govern the arbitration is not a material and essential term of the arbitration agreement. As a result, we find that it would be error for the trial court to deny Sugar Land's Arbitration Motion based on an ambiguity related to AAA's arbitration rules.

### 3. Lakhani Did Not Show that the Arbitration Agreement Was Procedurally Unconscionable

"Whether a contract is contrary to public policy or unconscionable at the time it is formed is a question of law." *In re Poly-Am., L.P.*, 262 S.W.3d at 349 (citing *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006)). "Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 498–99 (Tex. 1991) (Gonzalez, J., concurring)). As the party opposing the arbitration, Lakhani had the burden of proving unconscionability. *See In re Poly-Am., L.P.*, 262 S.W.3d at 348.

Lakhani argued at trial and on appeal that the arbitration agreement was procedurally unconscionable because of his unequal bargaining power and lack of sophistication. He pointed to his affidavit that showed (1) that he was nineteen years old and only had a high school education, (2) that he had no understanding of arbitration proceedings, (3) that he did not discuss the terms with any employee or representative of Sugar Land or any defendant, and (4) that signing the Release was a take-it-or-leave-it condition for access to the facility. He also pointed

out that he was not represented by counsel, as required under the Texas Arbitration Act (TAA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(c) (providing that an arbitration agreement relating to a personal injury claim is subject to the TAA when the parties agree in writing on advice of counsel and the agreement is signed by the parties and their attorneys).

However, "[m]ere inequality of bargaining power is not a sufficient reason to hold an arbitration agreement unenforceable." *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 377 (Tex. App.—Texarkana 1999, orig. proceeding). Further, the fact that it was a condition of access to the facility does not make it unconscionable per se. *See id.* In addition, "[a] party who signs a contract containing an arbitration provision does not have to be told about the provision, but is presumed to know the contents of the contract." *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 372 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding) (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (per curiam)). Finally, since the arbitration agreement is subject to the FAA, it cannot be held to be unenforceable based on a requirement in the TAA that is applicable only to arbitration agreements but not to contracts in general. *See Venture Cotton Coop.*, 435 S.W.3d at 227. For that reason, the arbitration agreement may not be found unconscionable on the basis that Lakhani did not have the advice of counsel.

The Release also belies Lakhani's affidavit testimony that he did not understand what he signed or that he needed to have it explained to him. Immediately above his signature there are two affirmations, as follows:

> **BY EXECUTING THIS AGREEMENT, I REPRESENT I HAD A SUFFICIENT OPPORTUNITY TO READ THIS AGREEMENT, I HAVE**

16

**READ AND UNDERSTAND THIS AGREEMENT, AND I AGREE TO BE BOUND AS SET FORTH HEREIN.**

I HAVE HAD SUFFICIENT OPPORTUNITY TO READ THIS AGREEMENT. I HAVE READ AND UNDERSTAND THIS AGREEMENT AND I AGREE TO BE BOUND BY ITS TERMS.

This unambiguous language supports a conclusion that Lakhani read the agreement and understood that he was agreeing to arbitrate any dispute he had with Sugar Land arising out of his use of Adventure Park. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d at 371–72.

Based on this record, we find that Lakhani did not show that the arbitration agreement was unenforceable because of procedural unconscionability.[8] As a result, we find that it would be error for the trial court to deny Sugar Land's Arbitration Motion based on procedural unconscionability.

### 4. Lakhani Showed that Part of the Arbitration Agreement Was Substantively Unconscionable

As noted above, the arbitration agreement includes a provision that "[t]he arbitrator shall have no authority to award punitive or exemplary damages." Lakhani argues that this provision deprives him of his substantive rights afforded by statute. *See* TEX. CIV. PRAC. & REM. CODE

---

[8]Lakhani asserts that the record is similar to the one in *In re Turner Brothers Trucking Co.* However, in that case, the record showed that "[t]esting by a licensed psychologist showed that [the plaintiff] was functionally illiterate and had a premorbid reading disorder," that "[t]he employees who presented [the plaintiff] with the documents purporting to contain his agreement to arbitrate did not themselves understand the agreement," and that "[the plaintiff] had no one to explain the document to him and did not understand it." *In re Turner Bros. Trucking Co.*, 8 S.W.3d at 377. Thus, unlike this case, the evidence in that case showed that, because of the plaintiff's functional illiteracy and reading disorder, he was unable to read and understand the document he signed on his own and he was deprived of the opportunity to have it explained to him. Under that record, we held that the evidence supported the trial court's conclusion that the plaintiff did not knowingly consent to arbitration. *Id.*

17

ANN. § 41.003 (providing for the recovery of exemplary damages if the claimant proves by clear and convincing evidence harm resulting from fraud, malice, or gross negligence). We agree.[9]

"An arbitration agreement covering statutory claims is valid so long as 'the arbitration agreement does not waive substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights.'" *In re Poly-Am. LP*, 262 S.W.3d at 352 (quoting *In re Halliburton*, 80 S.W.3d at 572). "[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985))).

In *In re Poly-America LP*, an arbitration agreement signed with an employer prohibited the arbitrator from ordering reinstatement or awarding punitive damages, thereby eliminating two remedies available under the Texas Workers' Compensation Act. *Id.* at 353. The Texas Supreme Court held that this provision of the arbitration agreement was void because it "substantively limit[ed] Poly-America's liability for wrongful retaliation and thereby undermine[d] the deterrent regime the Legislature specifically designed to protect Texas workers." *Id.* at 353. It was therefore illegal and unconscionable because it purported to "prohibit the award of punitive damages or reinstatement and thus inhibit effective vindication of

---

[9]Lakhani also asserts that this amounts to a pre-injury waiver of future liability for gross negligence, which the Texas Supreme Court has indicated is void as against public policy. *See Zachry Const. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98, 116 (Tex. 2014*); Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 687 (Tex. 2008) (Hecht, J., concurring); *Crowell v. Hous. Auth. of Dallas*, 495 S.W.2d 887, 889 (Tex. 1973). Because we grant relief on his first argument, we need not address this argument.

[the plaintiff's] retaliatory-discharge claim in an arbitral forum." *Id.* 361. The court explained that "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *Id.* at 360. Finding that severing, or excising, the illegal provision would not defeat or undermine the essential purpose of submitting the parties' dispute to arbitration, the court severed the illegal provision from the arbitration agreement and found that the trial court had not abused its discretion in compelling arbitration. *Id.* at 360–61.

The San Antonio Court of Appeals applied the reasoning in *In re Poly-America LP* to an arbitration agreement that prohibited the award of exemplary or punitive damages when the plaintiff sought exemplary damages for malice. *Amateur Athletic Union of the United States, Inc. v. Bray*, 499 S.W.3d 96, 108–09 (Tex. App.—San Antonio 2016, no pet.). After noting that Section 41.003 of the Texas Civil Practice and Remedies Code authorizes the award of exemplary damages, the court held that the provision was substantively unconscionable because "the portion of the arbitration agreement prohibiting punitive damages eliminates a statutory remedy that is available as a matter of public policy." *Id.*

In another case in which an arbitration agreement prohibited the award of exemplary damages, the El Paso Court of Appeals examined Section 41.003 and concluded that "the statutory remedy of exemplary damages in Section 41.003, much like the statutory remedies at issue in *In re Poly-America* and other cases, serves an important legislative purpose: deterrence and punishment of behavior that the legislature has identified as sanctionable." *Ridge Natural*

19

*Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 137 (Tex. App.—El Paso 2018, no pet.). Since "Section 41.003 represent[ed] a measured legislative judgment and a statement of public policy aimed at enforcing the State of Texas' interest in deterring fraud, malice, and gross negligence," the El Paso court found that the provision barring the award of exemplary damages was substantively unconscionable. *Id.* at 137–38.

We agree with the reasoning of the San Antonio and El Paso Courts of Appeals, and we find in this case that the provision in the arbitration agreement that bars the award of exemplary and punitive damages is substantively unconscionable and void as against public policy. For that reason, we find that it would not be error for the trial court to find that this provision of the arbitration agreement was substantively unconscionable and unenforceable. Nevertheless, we find that the trial court erred when it denied Sugar Land's Arbitration Motion rather than severing the provision that bars the award of exemplary and punitive damages.

The Release in this case contains a severability clause that provides, "[Lakhani] expressly agrees that this Agreement is intended to be as broad and inclusive as is permitted by the laws of the state in which the Premises is located and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect." "[A]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *Venture Cotton Coop.*, 435 S.W.3d at 230 (quoting *In re Poly-Am. LP*, 262 S.W.3d at 360). "In determining an agreement's essential

20

purpose, the issue is 'whether or not parties would have entered into the agreement absent the unenforceable provisions.'" *Id.* (quoting *In re Poly-Am. LP*, 262 S.W.3d at 360).

The Supreme Court found in *Venture Cotton Cooperative* and *Poly-America LP* that the essential purpose of the agreement to arbitrate in those cases was that disputes between the parties be submitted to an arbitral forum rather than to a court. *Id.*; *In re Poly-Am. LP*, 262 S.W.3d at 360. Similarly, in this case, the essential purpose of the agreement to arbitrate was that "any dispute or claim" between Lakhani and Sugar Land be submitted to arbitration, rather than to a court. Excising the illegal provision forbidding the arbitrator from awarding punitive or exemplary damages out of the arbitration agreement will not defeat or undermine this purpose. *See In re Poly-Am. LP*, 262 S.W.3d at 360. For that reason, we find that the provision in the agreement to arbitrate that bars the award of punitive or exemplary damages should be excised from the agreement to arbitrate.[10] As a result, "a potential arbitrator in this case is now authorized to award punitive damages, as well as compensatory damages." *See Hadnot v. Bay Ltd.*, 344 F.3d 474, 478 (5th Cir. 2003).

## IV.    Conclusion

For the reasons stated, we affirm the trial court's order denying the Arbitration Motion of UATP, Zoya, and UA. However, because the arbitration agreement between Sugar Land and

---

[10]At trial, Lakhani argued that severance of the provision that bars the award of punitive or exemplary damages and enforcing the arbitration agreement would be inefficient because it would leave the gross negligence claims to be decided by the court, while the other claims would be in arbitration. This, however, is a misunderstanding of the effect of excising the illegal provision from the arbitration agreement. Because the scope of the arbitration agreement encompasses any dispute or claim between the parties, when the provision barring the award of punitive or exemplary damages is excised out, this results in the arbitrator hearing all of Lakhani's claims against Sugar Land, including the claims for gross negligence, and authorizing the arbitrator to award punitive or exemplary damages, if appropriate.

21

Lakhani is enforceable, except for the provision that bars the award of punitive or exemplary damages, we reverse the trial court's order denying Sugar Land's Arbitration Motion, excise the provision prohibiting the award of punitive or exemplary damages from the agreement to arbitrate, and remand this case to the trial court with instructions to enter an order, consistent with this opinion, compelling arbitration of all of Lakhani's claims against Sugar Land.


Scott E. Stevens
Justice

Date Submitted:     February 28, 2022
Date Decided:       March 29, 2022